MINNIE MOREHOUSE *vs.* JOSEPH J. MOREHOUSE.

* Third Judicial District, New Haven, Jan. Term, 1898. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The mere fact that the parties to a divorce suit had spent their winters
in New York, is not inconsistent with a finding that the plaintiff
had " continuously resided in this State three years next before the
date of the complaint," as required by § 2806 of the General Stat-
utes.

The defendant, knowing that his wife had a heart trouble which his
conduct would aggravate, frequently appeared before her in an
intoxicated condition, humiliated her by his vulgarity and profanity,
and abused her with vile and unfounded charges. Aware that he
had an infectious disease, he nevertheless solicited and had inter-
course with his wife, who was ignorant of his condition, and thereby
communicated to her the disease from which she suffered for months.
Afterwards, while still having the disease, he again solicited inter-
course with her which she refused, whereupon he attempted to
accomplish his purpose by violence. As a result of his ill-treatment
his wife became seriously and dangerously ill. *Held* that this con-
duct of the husband constituted intolerable cruelty and justified the
trial court in granting her a divorce.

Upon his cross-examination the defendant denied that he had acknowl-
edged his ill-treatment of his wife to one *C*, and thereupon *C* was
called in rebuttal to testify to the defendant's admissions. *Held*
that the allowance of this evidence in rebuttal rather than in chief,
rested in the discretion of the trial court, and that such discretion
·had not been abused.

The answer of the defendant alleged that the plaintiff had herself been
guilty of adultery, and although this allegation was not formally
denied upon the record, the parties´ proceeded with the trial as
. though it had been denied, and introduced evidence to prove and
disprove the truth of the charge. *Held* that the defendant was
estopped from claiming that the judgment in favor of the plaintiff
was erroneous on account of this formal defect.

[Submitted on briefs, Jan. 21st—decided March 2d, 1898.]

SUIT for a divorce, brought to the Superior Court in Litch-
field County and tried to the court, *Ralph Wheeler, J.;* facts
found and judgment rendered for the plaintiff, and appeal

* Transferred from first judicial district.

by the defendant for alleged errors in the rulings of the court. *No error.*

The complaint alleged three grounds of divorce: adultery, habitual intemperance, and intolerable cruelty. The answer denied the main allegations of the complaint, and alleged that the plaintiff had committed adultery. In the judgment the court finds: " (1) That the plaintiff has resided in the State of Connecticut continuously for three years before the date of this complaint; (2) that the plaintiff, by the name of Minnie C. Burchard, was lawfully married to the defendant on the 28th day of June, 1883; (3) that the defendant on divers days between April 1st, 1892, and the date of this complaint, has been guilty of intolerable cruelty to the plaintiff ; " and thereupon adjudges a divorce.

The special facts on which the judgment is founded, are found as follows: "1. The plaintiff and defendant intermarried at Danbury in this State, on June 28th, 1883. 2. They have no children. 3. Shortly after their marriage they went to Chatham, New York, to live, and remained there until June, 1890, when they came to Connecticut, where they intended to and did make their home and residence, and where they have ever since resided. From said Chatham they came to Salisbury in this State, and boarded at the Maple Shade Hotel until August 10th, 1891, when they moved into their own home, which had been in the meantime built, in the village of Chapinville in said Salisbury, and both resided there until February 26th, 1896, with the intention of making it their home indefinitely, when the plaintiff left the defendant for the reasons hereinafter stated, and returned to said Danbury, her native place, where she has ever since remained. The defendant has continued his home and residence at said Chapinville, and still resides there. In 1890 the defendant became connected with the Landon Iron Company, having a furnace in Chapinville. Since 1889 the defendant has been connected with a number of other corporations, doing business in different localities, and has had an office in New York City. The plaintiff and defendant, while living together and having their home

in Chapinville, passed a portion of each year, from December 1st to May 1st following, in New York, where they occupied a leased flat. 4. I find that the plaintiff and defendant have each continuously resided in this State, as aforesaid, since June, 1890. 5. While I do not find that the defendant was habitually intemperate within the meaning of our statute, I do find that he was habitually addicted to the use of intoxicating liquor in large quantities and at times drank to excess, usually at home and out of business hours and under such circumstances as to cause the plaintiff mortification and suffering. The plaintiff used such liquors moderately in a social way and at the table with him. 6. This habit of drinking grew upon him, and was more marked during the last few years of their married life, and was to a considerable extent the cause of his conduct and treatment of her hereinafter found. 7. Her remonstrances in respect to his habits were of no avail. He persisted in them, well knowing the consequences, and fully aware of the effect upon her his conduct and treatment so caused. 8. In 1891 or 1892, the plaintiff became affected with a heart trouble, functional in its nature, which continued thereafter as long as she lived with him, and which was often seriously aggravated by his abuse and ill-treatment of her. 9. The plaintiff is a lady of culture and refinement. 10. The defendant, when under the influence of liquor, as he very frequently was, was vulgar, profane, brutal and jealous. 11. When under the influence of liquor he frequently, and particularly during the last three years of their married life, used towards his wife, and in her presence, violent, abusive, profane and obscene language, was persistently unkind to her, and on several occasions falsely accused her of being unchaste and unfaithful to him. 12. When sober the defendant was not jealous of his wife, and had perfect faith in her innocence and fidelity. 13. The plaintiff has always been a faithful wife. 14. The defendant was fully aware of the nature and extent of his wife's heart trouble, and well knew that his ill-treatment of her would aggravate it and make her seriously ill. Still he continued to humiliate her

by his vulgar and profane language; abused her shamefully with vile and unfounded charges; and at times resorted to brutal violence when she was ill and he knew it, thereby knowingly aggravating her illness. On very many occasions his ill-treatment made her ill, a result which he knew would follow such treatment. 16. The defendant has a slight congenital phimosis, a fact which he concealed from his wife while they lived together. 17. In 1891, by reason of neglect and uncleanliness on his part, he had from this cause an attack of acute ballinitis with some complications, and from that time on, and particularly and almost constantly in 1895 and in 1896, until she left him, he had recurring attacks of the same disease due to the same causes and in an aggravated form with considerable inflammation and copious discharge, notwithstanding the fact that he was under medical treatment for the disease. 18. The radical cure for phimosis, which was advised by his physicians, is circumcision, a simple and speedy method, and one causing the patient little pain and annoyance. 19. Ordinary care and cleanliness of person would have avoided these attacks of ballinitis. 20. This disease was infectious, and could be communicated to his wife by intercourse, and he well knew it. 21. In June, 1895, while he had this disease and he knew it and his wife did not know it, he had intercourse with her at his own solicitation, and communicated to her the disease, resulting in acute urethritis and vaginitis and later in chronic catarrhal endometritis, which disease caused her great fright and fear and intense and long-continued suffering, and very seriously impaired her health. She was necessarily subjected to medical treatment for months, and was not cured of the last named disease until after she left him. 22. After the defendant communicated to the plaintiff in June, 1895, the diseases aforesaid, and she became aware of the fact, as she did almost immediately, she did not cohabit with him or permit him to have intercourse with her, although he frequently solicited intercourse, notwithstanding the fact that he then had this same disease and she was still suffering from the diseases communicated to her by him as stated, all of which

he well knew.   During a part of this time she occupied the
same bed with him.   23.  In February, 1896, he came home
from a business trip in an intoxicated condition, still having
this disease, and solicited intercourse with her, and, on her
refusal, insisted and attempted to accomplish his purpose
with actual violence.   He took hold of her throat with one
hand and held her down on the bed with the other, and only
desisted from further violence when the plaintiff threatened
to call for help.   24.  As the result of this treatment the
plaintiff was made ill for some days; she had a nervous chill
and was very sick all night.   25.  In November, 1895, the
plaintiff had been ill for some time because of his ill-treat-
ment.   When she was so ill, he abused her all night long
with profane and violent language, so that she had no sleep
whatsoever.   On the following morning he continued his
abuse and went to her bed where she lay, raised up with
pillows, took hold of her shoulders and violently pushed her
over on the bed, saying that he wished he could never see
her face again; he hoped that she would lie there and suffer
until her eyes dropped out; at the same time using very
profane language.   He also at that time accused her of being
untrue to him in many instances and said that she was
diseased and that he hoped he would never see her again.
26.  As the result of this treatment the plaintiff was made
seriously and dangerously ill; had bad fainting spells all
that day and for two days thereafter; and her condition be-
came most serious and her life was endangered.   Her illness
thus caused continued for a long time, and she had not
recovered from it and the effects of his ill-treatment last
mentioned at the time she left him.   27.  The defendant was
well aware of the necessary result of all of his conduct and
ill-treatment aforesaid, and well knew that her health would
be most seriously endangered thereby.   28.  The defendant's
treatment of the plaintiff became and was intolerable; and on
February 26th, 1896, she left him under just apprehension
of great danger to her life, health and person.   29.  The alle-
gation in said complaint, that the defendant on divers days
between April 1st, 1892, and the date of the writ, has been

guilty of intolerable cruelty to the plaintiff, is found to have been fully proved. 30. The allegation contained in the 3d paragraph of the defendant's answer is found to have been disproved. 31. The allegations of habitual intemperance and adultery, contained in the plaintiff's complaint, are not proved as grounds of divorce. 32. Upon the foregoing facts the defendant claimed, as matters of law, that the acts of the defendant did not constitute intolerable cruelty within the meaning of the law, and that the facts do not constitute residence for either plaintiff or defendant within this State, as required by the statute; and that the plaintiff had not resided in the State of Connecticut continuously the length of time required by the statute to entitle her to maintain this action. 33. The court overruled such claim and held and decided that such acts did constitute intolerable cruelty under the law, and that the parties had resided within the State the requisite length of time. $33\frac{1}{2}$. The defendant's counsel also denied that the plaintiff's residence had been and was that of the defendant, who resided in the city, county and State of New York. The court found as a fact that the defendant had resided in this State continuously from August 10th, 1891, to the day of trial, and also found and held that the plaintiff had also so resided with the defendant. 34. Thereupon the court rendered judgment granting to the plaintiff a divorce on the ground of intolerable cruelty, with change of name as prayed for."

Upon the trial the defendant charged one Herbert N. Curtis with having improper relations with his wife; and upon cross-examination denied having any business relations with Curtis since January, 1895, and denied having made certain admissions as to his own conduct to his wife. The plaintiff produced Curtis in rebuttal, for the purpose of contradicting the defendant, and for the purpose of proving the defendant's admissions as to his habits and ill-treatment of his wife. To this evidence counsel for the defendant objected, on the ground that the statements of the defendant sought to be contradicted were made on cross-examination, and that the plaintiff had made the defendant her own witness. The evidence was admitted and the defendant excepted.

The witness Curtis was also offered in rebuttal for the purpose of proving the time, place and circumstances of each interview he had had with the plaintiff since she left her husband. The evidence was objected to and admitted. The defendant excepted.

The appeal contains numerous objections to the facts found by the trial court; and assigns errors in law in the rulings of the court that the facts found established " continuous residence," and that the facts found established "intolerable cruelty ;" and in the admission of testimony.

*Donald T. Warner* and *Leonard J. Nickerson,* for the appellant (defendant).

*Samuel Tweedy* and *Eugene C. Dempsey,* for the appellee (plaintiff).

HAMERSLEY, J. The plaintiff and defendant have lived in this State since June, 1890. The court finds that when they came to Connecticut they intended to make their home here. There is nothing in the evidence certified at request of both parties, to indicate that this finding violates any principle of law. Having made this State their home, the fact of spending their winters in the city of New York is not inconsistent with their continued residence here ; and the court did not err in finding that the plaintiff had, as required by statute, " continuously resided in this State three years next before the date of the complaint." General Statutes, § 2806.

The defendant claims that the facts found by the court do not constitute "intolerable cruelty." When our legislature, in 1843, adopted as grounds of divorce *a vinculo,* "habitual intemperance " and "intolerable cruelty," it used these words with their ordinary meaning, but with special reference to what had been since 1639 our settled policy in respect to divorce ; *i. e.,* marriage is a life status and should never be dissolved, unless one of the parties is guilty of conduct which in itself is a practical annulling and repudiation of the marriage

covenant. Wilful desertion for such a length of time as the statute says shall conclusively prove a permanent abandonment and repudiation of all marital rights and duties, had been a ground for divorce. Following this analogy the legislature, in 1843, made grounds of divorce: intemperance so long continued that the fixed habit renders the party incapable of performing the duties of the marriage relation; and cruelty of such a nature as to be intolerable, and to render a continuance of the relation by the suffering victim impracticable. *Dennis* v. *Dennis*, 68 Conn. 186, 192. Mere faults of temper and of manner do not constitute such cruelty. There are disagreeablenesses and trials causing much weariness and suffering which parties to the marriage contract must bear; the policy of the State, as well as the sacred nature of the marriage covenant, requires patient endurance. But there are injuries and insults which are outside the pale of that covenant; submission to which was never contemplated, and which are not to be borne. No complete definition can be given, because the exhibitions of cruelty cannot be forecast.

In the present case it appears that the defendant treated his wife, a lady of culture and refinement, as follows: Knowing that she was affected with a heart trouble and that his conduct would aggravate it, he frequently appeared before her in an intoxicated condition, humiliated her by his vulgar and profane language, and abused her with vile and unfounded charges. On many occasions his conduct made her ill, a result which he knew would follow such treatment. While affected with an infectious disease, which he knew could be communicated to his wife by intercourse, he solicited intercourse (she being ignorant of his condition) and communicated to her the disease, from the effect of which she suffered for months. Afterwards, while still having this disease, he solicited intercourse with her and, on her refusal, insisted and attempted to accomplish his purpose with actual violence. As a result of the defendant's treatment of her, the plaintiff was made seriously and dangerously ill.

This is intolerable cruelty. The mere statement of such

conduct demonstrates its character. *Mayhew* v *Mayhew*, 61 Conn. 233; *Brown* v. *Brown*, L. R. 1 P. & D. 46; *Kelly* v. *Kelly*, L. R. 2 P. & D. 31.

The testimony of the witness Curtis relative to conversations with the defendant, was admissible for the purposes for which it was offered. If it should be regarded as strictly evidence in chief, its admission in rebuttal was a matter of discretion, and the discretion was not abused.

It is difficult from the record to see how the testimony of Curtis as to his interviews with the plaintiff after she had left her husband, was material; the evidence given, however, could not have injured the defendant.

The defendant claims in argument that the judgment is erroneous, because the record does not show a formal denial of the allegation in his answer charging the plaintiff with adultery; that the allegation is therefore admitted and constitutes a bar to the action. This claim was not made in the court below, and is not distinctly specified in the reasons of appeal. The allegation was treated by the parties upon the trial as denied; evidence tending to prove it was offered by the defendant and contradicted by the plaintiff, and it is found by the court to have been disproved. Moreover, by going into any trial the defendant treated the allegation as denied; if, as he now claims, the adultery of the plaintiff was admitted upon the record, he was entitled to a judgment without trial. He is estopped from now making this claim.

The errors claimed to have been made by the trial court in finding from the evidence its conclusions of fact, cannot be considered. *Thresher* v. *Dyer*, 69 Conn. 404, 408.

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.