## GLADYS W. JACOBS *vs.* RAYMOND B. JACOBS.

First Judicial District, Hartford, May Term, 1920.

PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Any wilful act by one spouse which inflicts unnecessary pain or suffering upon the other, constitutes cruelty; and if such acts are persistently repeated until they become typical of the marital conduct of the offender, leaving their victim impaired in health and in constant dread of their recurrence, they may properly be characterized as "intolerable," and, as such, warranting the dissolution of the marriage relation.

In the present case there was evidence that the defendant repeatedly choked the plaintiff, his wife, sometimes so violently as to cause her much suffering and to leave tell-tale marks upon her throat; that such conduct, which was practically continuous or recurrent at short intervals, was accompanied by acts and words indicating his infatuation for other women and an apparent desire to provoke his wife into leaving him because he was tired of her. *Held* that such evidence was amply sufficient to warrant the conclusion of the trier that the defendant had been guilty of intolerable cruelty to his wife.

A witness for the plaintiff was allowed, against objection, to testify that she had been told by the plaintiff that her husband had choked her. *Held* that such testimony was hearsay and inadmissible; but that its reception under the circumstances was harmless, inasmuch as it appeared from the record that another witness had, without objection, answered a similar inquiry in the same way, and that when the defendant's attention was called to such testimony by his own counsel, he admitted having choked his wife "in a playful way." (*One judge dissenting.*)

Argued May 7th—decided June 10th, 1920.

ACTION for a divorce upon the alleged ground of intolerable cruelty, brought to the Superior Court in Hartford County and referred to a committee who heard the evidence and reported the facts; to the acceptance of the committee's report the defendant filed a remonstrance, and later an amended remonstrance, each of which was overruled (*Haines* and *Keeler, Js.*)

and judgment was afterward rendered (*Keeler, J.*) for the plaintiff, from which the defendant appealed. *No error*.

The complaint, in the usual form, claimed a divorce on the ground of intolerable cruelty, and issue was joined thereon. There was also joinder of issue on the defendant's cross-bill, which went to judgment for the plaintiff, and plays no part in the appeal.

The case was referred to and tried by a committee, whose report included these facts: The plaintiff, whose name before marriage was Gladys White, and the defendant intermarried January 15th, 1907, have since resided continuously in Hartford County, and have one child of the marriage, a boy born in February, 1911. "I find as a fact that the defendant was guilty of intolerable cruelty to the plaintiff . . . between January 13th, 1913, and June 27th, 1918 (date of plaintiff's complaint)."

There was a remonstrance to the acceptance of the report which, so far as it deals with matters involved on the appeal, alleged that the evidence offered before the committee neither supported a finding of intolerable cruelty, nor tended to prove it, "as that expression has been interpreted by the courts of this State as a ground for divorce"; and that the committee's finding was "against the weight of the evidence." A demurrer to this was sustained, and an amended remonstrance repeated the same grounds, with certain additions, only two of which are of importance here: (1) "3. There is no evidence of intolerable cruelty and none was offered before the committee." (2) "8. That the committee erred as a matter of law in admitting over the defendant's objection, the testimony of Miss Atwood, for the reason that the question called for the fact of communication and for a statement in reality of the facts so communicated, and that the question as stated comes

clearly within the rule against the admission of hearsay." The testimony is as follows:—

"Q. Well, now, did Mrs. Jacobs communicate to you the fact that her husband was choking her from time to time? Judge Tuttle: I object to that. Mr. Clarke: What's the objection? Judge Tuttle: Pure hearsay. Mr. Clarke: I haven't asked her for anything Mrs. Jacobs said, I have asked her if she communicated the fact to her. Judge Tuttle: I object to it. Mr. Clarke: I claim it. Judge Tuttle: Certainly that's hearsay. It is equivalent to saying did Mrs. Jacobs tell you her husband had assaulted her. Of course it's inadmissible. This isn't an action for bastardy. Mr. Clarke: What she communicated wouldn't be admissible, I admit; but the fact that she did communicate is admissible. The Committee: I am inclined to think Mr. Clarke is right on that, Judge. Judge Tuttle: Will Your Honor note an exception?"

A demurrer to those portions of the remonstrance which had already been passed upon by the first demurrer, was sustained substantially because they "ask the court to revise the action of the committee on questions of pure fact." After a hearing upon the remaining matters, the court overruled the entire remonstrance and found as follows with regard to the matters involved in the hearing:—

"13. As to the allegation of said paragraph 3, that no evidence of intolerable cruelty existed in the case and none was offered by the plaintiff, the court after a perusal of a transcript of all the evidence in the hearing before the committee, finds that from the testimony of the plaintiff, corroborated by that of Mrs. Ida Huntley White, her mother, and of Mrs. Mary A. White, her grandmother, the committee, if he believed said testimony to be true, might properly have found that the defendant was guilty of intolerable cruelty toward his

wife in that he seized her by the throat and tightening his grip thereon caused her great injury and suffering, being in effect the allegation of specification 1, of the plaintiff's more specific statement, as on file. 14. The court therefore finds that the finding of the committee in this regard was not made without proper evidence. 15. Upon the ground of remonstrance set up in paragraph 8 thereof, the court finds that the committee's admission of the testimony of the witness Atwood was open to the objection made by defendant's counsel, and was improperly admitted. 16. The court finds, however, that from the nature of the testimony and the manner in which it was treated and in effect disclaimed by plaintiff's counsel, that it did not harm the defendant in the estimation of the committee, and that the defendant is not entitled to have the report set aside by reason of the admission of this testimony. This ground of remonstrance was overruled."

A judgment for the plaintiff for a divorce, custody of the minor child, and alimony, followed the acceptance of the report, and the defendant's appeal assigns error (1) in the court's refusal to sustain the remonstrance, (2) in holding that the evidence before the committee warranted a finding of intolerable cruelty, (3) in holding that the admission of the witness Atwood's testimony was not harmful and prejudicial error, and (4) in refusing to correct its finding as to the character of the evidence before the committee on the subject of intolerable cruelty.

In support of its last assignment, certain portions of the evidence are printed, and the trial court in its finding imports into the record the complete transcript of the evidence for reference in this court without printing.

*Benedict M. Holden* and *Joseph P. Tuttle,* for the appellant (defendant).

*Sidney E. Clarke,* for the appellee (plaintiff).

CASE, J.  The record presents two questions for our consideration.  Upon the first of them, we think the trial court correctly held that the finding of intolerable cruelty on the part of the defendant was warranted by the evidence before the committee.  Cruelty includes any wilful act of a human being which inflicts unnecessary pain.  Webster's Dict., *Verb.*  So persisted in as to become "intolerable and to render a continuance of the (marriage) relation by the suffering victim impracticable," it grows into a ground for divorce. *Morehouse* v. *Morehouse,* 70 Conn. 420, 427, 39 Atl. 516.  The test of its unbearable character does not therefore necessarily depend upon any aggravated quality of the given act or acts of which it consists, but rather upon the persistent recurrence or continuance of conduct to which such acts give expression.  An isolated act, though an inherently cruel one, may wholly fail, either in its nature or in the effect it is calculated to produce, to warrant characterization as intolerable, or beyond reasonable endurance; but if it is typical of conduct which forms the constant and daily habit of one in his association with and treatment of another, the cumulative effect upon its victim may well become so, within any fair and humane construction of such terms.  So too, even if its continuance be not literally and strictly an unbroken one, if the conduct is so persistently recurrent at irregular intervals that its victim is never free from reasonable dread of it, or sure of even temporary respite from its infliction, it may necessarily acquire the same intolerable character.

From the evidence before him the committee might have found that the defendant on many occasions choked the plaintiff,—sometimes so violently as to

cause her much suffering, and to leave both a soreness of the throat and the humiliation of tell-tale marks upon the skin; that this conduct was accompanied by acts and language indicating his infatuation for other women, and an apparent desire to provoke his wife into leaving him because he was tired of her; that it was practically continuous or recurrent at short intervals for a long period before the final separation of the parties, and injuriously affected her health. This was quite enough to warrant the conclusion of the committee.

The remaining ground of appeal deals with the question asked of Miss Atwood, and the trial court's treatment of the committee's admission of it as harmless error. Neither the question nor the mere "yes" which answered it and closed that line of examination,—as our inspection of the unprinted evidence discloses,—comes within any exception to the hearsay rule recognized in our practice, and the defendant's objection should have been sustained. A reference to the record clearly shows, however, that its admission cannot have harmed the defendant, and for these reasons: Another witness for the plaintiff, her mother, had already testified to having been told by her that the defendant choked her. This came in without objection, and in the course of the defendant's subsequent examination by his counsel his attention was called to the mother's statement and he was asked whether he had ever choked his wife. He said that "in a playful way" he had,—a sort of confession and avoidance that at once rendered harmless Miss Atwood's answer to the single inadmissible question that had been asked of her. Her testimony had been definitely limited by the committee to the simple fact of a communication by the plaintiff that chokings had occurred,—whether in outbursts of playfulness or

otherwise, it did not appear, since Miss Atwood was in effect forbidden to say whether the plaintiff had enlightened her as to the quality of the husband's conduct attending the performances. The husband's answer, therefore, admitted the truth of everything which the committee, by his own expressed restriction, was warranted in gathering from Miss Atwood's testimony, and the trial court properly disregarded the error as one which did not harm the defendant.

Our conclusion necessarily disposes of the claim for a correction of the finding, which is without merit.

There is no error.

In this opinion PRENTICE, C. J., BEACH and GAGER, Js., concurred.

WHEELER, J. (dissenting). The evidence of intolerable cruelty was confined to the period subsequent to the death of defendant's father, February 16th, 1918, and prior to the date when plaintiff left defendant's house, December 5th, 1918.

Mrs. Jacobs testified as to the period prior to the father's death as follows: "Q. During all that time, that two years and more, up to the time of the elder Jacobs' death, you and your husband got along pretty well? A. Yes. Q. And you had nothing to find fault with until this change after his father's death? A. Well, nothing serious to find fault with."

In March, 1918, defendant hired a cottage at the shore for his wife and purchased an automobile for her use. In April they took a pleasure trip to New York, and about July 1st, 1918, Mrs. Jacobs moved to the cottage at the shore and remained there up to sometime in the following September. The defendant twice remained over night at the cottage, otherwise he was not there. In June, 1918, the plaintiff brought

this action for divorce. Mrs. Jacobs lived in the homes provided for her by her husband until she left his house, December 5th, 1918; the defendant occupied the homes with her except that he was at the shore cottage but twice. From the middle of April, 1918, they did not cohabit.

The witnesses for the plaintiff as to acts of cruelty and conduct of intolerable cruelty were the plaintiff, her mother and her grandmother.

This summary, fragmentary as it is, will indicate that the proof was not disinterested in character, or broad in its extent or in the period of time it covered. It was all flatly and fully contradicted. There are many features of this testimony, apart from the fact that it was generously contradicted, which leave the mind somewhat incredulous of its credibility, and longing for the word of some disinterested and impartial witness.

One witness who was not related to the plaintiff was permitted to testify that Mrs. Jacobs, the wife, communicated to her the fact that her husband was choking her from time to time. The majority opinion concedes, without argument, the inadmissibility of this evidence as hearsay, but holds that its admission was harmless error. The trial court so held, and argued that it could not have influenced the committee because plaintiff's attorney observed to the witness as she was leaving the stand, "You apparently don't know much about the case."

The majority opinion is unable to accept this reasoning, and adopted a theory new to the case, and that is that the defendant had admitted the choking and hence no harm was done if a statement of what Mrs. Jacobs had said about acts of choking were admitted. The theory of the court seems to be that since this was an admitted fact in the case, corroboration of it by inadmissible evidence was inconsequential in its effect.

Jacobs *v.* Jacobs

This certainly does a grievous injustice to the testimony of Mr. Jacobs. At all times he denied every act of physical cruelty, and his counsel, in the 425 pages of the transcript, furnished conclusive evidence that neither they nor their client admitted the charge upon which the action for divorce rested. But let Mr. Jacobs' own words settle the point. "Q. Now, Mrs. White, on page 53, testified that Mrs. Jacobs told her that you had choked her, and that was before they went to the shore, and afterwards. Now, in the first place, did you ever choke Mrs. Jacobs? A. In a playful way I have acted the choking, but I have never in my life tried to choke Mrs. Jacobs, and I doubt very much if there was ever a time when I was playing that there was the least slight mark on her neck, in any way, shape or form. Q. You have never choked Mrs. Jacobs in a fit of passion and made scratches and marks upon her throat which caused her pain? A. No, sir. . . . Q. Ever strike your wife in Mrs. White's presence? A. I never struck my wife. Q. Either in her mother's presence, or not in her mother's presence? A. Neither way. I have never struck my wife." The defendant's denials were explicit and repeated.

The further suggestion of the court that the communications to Miss Atwood may have related to instances of playful choking and hence were harmless, I fear, does not quite interpret Miss Atwood's testimony nor fully do justice to the purpose of plaintiff's counsel. They introduced the evidence in order to prove that the wife did communicate this fact to Miss Atwood. In my opinion this inadmissible testimony cannot be held to have been disregarded by the committee in forming his conclusion that the defendant had been guilty of acts of intolerable cruelty as alleged.