*971 OPINION OF THE COURT
Ralph Yachnin, J.
A summons and complaint was served by the plaintiff wife in this action for divorce on July 24, 1987. Thereafter, the defendant husband moved to dismiss the complaint on the grounds that the durational requirements under section 230 of the Domestic Relations Law could not be satisfied at the trial. At one time these were deemed jurisdictional requirements, then Lacks v Lacks (41 NY2d 71, rearg denied 41 NY2d 901) determined that it was not a "jurisdictional” issue in the strict sense and thus a pretrial determination was not necessary. To cause the parties to go through a full trial and incur the huge expenses of discovery, appraisers, experts, etc., when the possibility exists that this case could be dismissed on the basis of a lack of complying with section 230 of the Domestic Relations Law seems a wasteful and nonproductive procedure. Therefore, in the interests of justice and judicial economy, this court made an order dated October 23, 1987 granting a hearing so that the issue could be examined in depth and then determined. (Small v Small, 96 Misc 2d 469 [Sup Ct, Schenectady County 1978]).
The hearing was extensive and was held on January 11th and 12th. To eliminate technical problems it was agreed that the complaint would be deemed amended to afford the plaintiff the opportunity of showing compliance with any of the five subdivisions of section 230 of the Domestic Relations Law.
THE FACTS
The parties were married in 1967 in Manhasset, New York. Defendant has and still works for TWA and pilots only international flights. One of his job requirements is that he reside within two hours of his airport base. From the time of the marriage to 1970, the parties lived in New Jersey, as the defendant was based at Kennedy. He was then transferred to the San Francisco Airport and moved to California for several months, but then back to Kennedy and New York in 1971. The plaintiff and children moved to Greece at that time until 1977 when they moved back to California because the defendant’s base was changed to Los Angeles. In 1981, it was then moved back to Kennedy and the plaintiff took an apartment in New York. His wife and children moved back to Greece so that the children could learn the Greek language and culture. In 1983 the parties purchased a condominium apartment at 31 *972 Casino Street, Freeport, New York. In 1984 that apartment was sold and another was purchased just across the hall for a considerably larger sum of money because it afforded a view of the water. The parties still own this property. In addition, in 1985 the defendant purchased another condominium apartment in Freeport at 725 Miller Avenue, but this one was for rental purposes only and is still so maintained.
The plaintiff was born in Greece and became a citizen of this country in 1970. The defendant is a citizen by birth. There are two children of this marriage: Cynthia, born in this country, is almost 20 years of age and a student at Drew University in New Jersey. Jason is 16 years of age and was attending school in Greece, but since September 1987 has been a student at Manhasset High School. Right after Jason was born, his father, the defendant, went to the American Embassy in Greece and declared him to be an American citizen. Hence, all members of the family are citizens of the United States of America.
The defendant has his only automobile registered in New York since 1985 and keeps it in Freeport. In 1986 when the defendant applied for a New York State driver’s license, his address was listed thereon as 31 Casino Street, apartment 4-0, Freeport, New York. In that part of the application which requested that he set forth his "legal address if different from mailing address,” the defendant left it blank. There was also introduced in evidence the income tax statements of the parties for the years 1983 through 1986 and on each one it shows their address to be in Greece.
The parties have bank accounts in New York and Greece and own real property in Freeport (i.e., their condominium and the apartment rented to others) as well as realty in California and a lot in Greece. In 1985 they started to build a two-family home in Greece.
In March 1986 while the parties were in Greece, marital difficulties arose and the defendant called the plaintiff names, pushed her and caused her to suffer bruises. In July of 1986, again in Greece, the defendant slapped and hit the plaintiff. On July 7, 1987 at their Freeport, New York, apartment the defendant threatened to throw the plaintiff out of the house, ripped the phone off the wall as she was attempting to call the police, broke the lock from the bedroom door behind which the plaintiff took refuge, pushed her around and again called her names.
*973 As stated before, the defendant is an airline pilot and he testified that for one year prior to the service of the summons, he lived, and was assigned, as follows: July 1986, Kennedy. In August 1986, his base was assigned to Paris until July of 1987, except for the month of March of 1987, when he was based back at Kennedy at his own request. While in Paris, he lived in a hotel room. Between July 1986 and July 24, 1987, the date that the summons was served, he lived at the condominium in Freeport, New York, on the dates listed below:
July 1986.......... 3 days
August 1986 ....... 5 days
September 1986____ 4 days
October 1986 ...... 4 days
November 1986 ____ 3 days
December 1986 ____ 4 days
January 1987 ...... 5 days
February 1987 ..... 3 days
March 1987....... 15 days
April 1987......... 5 days
May 1987.......... 2 days
to July 24, 1987 for two hours.
Since the defendant had been assigned to Paris during most of the year but came to New York for several days every month, the query was made:
"question: What do you do in New York? Why do you come to New York?
"answer: I came to New York to check the mail relative to our economy, our economics in the States, to pay bills, to check on our daughter. Just long enough to do my business and get out.”
From August 1986 while the defendant was based in Paris until July 1987, he testified that he went to Greece, but only as a crew member, 4 or 5 times. He also claimed that he was there six other times. Notwithstanding the aforesaid the defendant related he was not in Greece during the months of February, March, April, May, June or July 1987.
CONCLUSIONS OF LAW
The plaintiff contends that she has shown facts which satisfy several of the subdivisions of section 230 of the Domestic Relations Law. The defendant, on the other hand, alleges that not one of the requirements has been met. Accordingly, it *974 is necessary to examine into each subdivision of the statute which is as follows:
"§ 230. Required residence of parties
"An action to annul a marriage, or to declare the nullity of a void marriage, or for divorce or separation may be maintained only when:
"1. The parties were married in the state and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or
"2. The parties have resided in this state as husband and wife and either party is a resident thereof when the action is commenced and has been a resident for a continuous period of one year immediately preceding, or
"3. The cause occurred in the state and either party has been a resident thereof for a continuous period of at least one year immediately preceding the commencement of the action, or
"4. The cause occurred in the state and both parties are residents thereof at the time of the commencement of the action, or
"5. Either party has been a resident of the state for a continuous period of at least two years immediately preceding the commencement of the action.”
Both subdivisions (3) and (4) have as one of their elements that "The cause occurred in the state”. To determine if this has been proved, a crystalization of the facts will be an aid:
March 1986: Defendant called plaintiff vile names in Greece.
July 1986: Defendant struck plaintiff in Greece.
Up to this time it is obvious that no "cause occurred in the state”.
July 1986: In New York, an incident happened wherein defendant threatened plaintiff, ripped the phone off the wall, broke the bedroom door lock, pushed the plaintiff and again called her names.
Has a cause, based upon cruel and inhuman treatment, now occurred in the State? No! A 20-year marriage will not be dissolved merely upon proof of a push and some name-calling, the breaking of a lock and the ripping of a telephone from the wall. (Hage v Hage, 112 AD2d 659.) No course of conduct has been evidenced which was harmful to the physical or mental *975 health of the plaintiff and made cohabitation unsafe or improper. (Hessen v Hessen, 33 NY2d 406; Brady v Brady, 64 NY2d 339 [1985]; Muscarella v Muscarella, 93 AD2d 993 [1983].)
The plaintiff then contends that all the events, including the March 1986 name-calling and the July 1986 striking should be deemed one continuous transgression upon her and thereby establish such "cause”. The court has searched in vain for authority enabling it to sustain the plaintiffs contention. By including the events which occurred in Greece, the court would be acknowledging that the foreign acts commenced the "cause” in this State. Such a finding flies in the face of the admitted facts. The plaintiffs theory cannot be sanctioned and thus subdivisions (3) and (4) offer her no relief.
In view of the fact that there is a finding of no cause of action, perhaps it would be appropriate to now pause and reflect as to whether the court should, at this very point, dismiss the action entirely. A case somewhat similar held that where the plaintiff moved for temporary appraisal fees and the court found no cause of action to exist in the papers, the court, sua sponte, had the right to dismiss the complaint. (Waterman v Waterman, 128 Misc 2d 665.) The court opined as the basis for its decision that the plaintiff put in issue the legal sufficiency of the complaint when he moved for an order awarding fees. This court rejects such reasoning when applied to the case at bar for several reasons:
1. While the rationale may be cogent when applied to a situation such as Waterman (supra), where the moving party was the plaintiff, it could not apply to the case at bar where the movant is the defendant. By defending a motion, in no way does the plaintiff put the complaint in issue. The plaintiff argues the merits of the subject motion only; nothing else.
2. If Waterman (supra) applied to a case where the defendant moves against the plaintiff it would mandate that the court, in every motion brought by a defendant, would have the added task of examining the sufficiency of the complaint.
3. Even if the motion is instituted by a plaintiff, to impose the duty to examine the complaint, whether asked for or not, would be by far too great a burden to be placed on the court. Further, under Waterman (supra), why should it be limited to a divorce case? Should it not be extended to causes of action for negligence, contract, malpractice, trusts, etc.?
4. Under Waterman (supra), every plaintiff (or if Waterman *976 is extended to a defendant’s motion also, then both parties), upon making a motion, would have to attach a copy of the complaint as an integral part of every set of moving papers.
5. If Waterman (supra) is the law, do we really need CPLR 3212, "Motion for summary judgment”?
6. If the motion is brought under CPLR 3211 "Motion to dismiss” then the court has the discretion under subdivision (c) to treat the motion as one for summary judgment. While the instant notice of motion does state that it is brought under said section, there is no doubt that it was really brought under Domestic Relations Law § 230 for on the very first page of the moving affidavit of Charles R. Kleinhardt, Esq., he noted that "the instant motion is addressed solely to this D.R.L. 230 residency requirement.” (Emphasis supplied.) It makes no mention of a cause of action requirement.
Assuming, arguendo, that the court did find that CPLR 3211 (c) applied, the treating of the motion as one for summary judgment is purely discretionary. This court refuses to exercise such discretion, for the defendant is obviously difficult to serve due to his constant travels. It would thus impose an unnecessary hardship upon the plaintiff. Also, the plaintiff should be given the opportunity of amending the complaint. However, probably the most important reason for the court’s refusal to exercise discretion is that there is nothing to stop the defendant from now bringing on a motion for summary judgment and thereby giving the plaintiff ample warning. If the plaintiff has by then properly amended the complaint to set forth a cause of action, the motion would probably take one course. If not, quite possibly the "law of the case” rule may dictate the decision. The ultimate result would be the same as in Waterman (supra), for in that case, after the court dismissed the complaint, it gave to the plaintiff "leave to replead should proper grounds for divorce actually exist.” (Supra, at 668.) The only difference here is that the "leave to replead” can now occur while the case is in progress rather than after a completely new exercise of pro forma, time consuming, expensive and quite possibly unnecessary detail work is performed.
Subdivision (1) has two elements: that the parties were married in New York. This is borne out conclusively by the testimony. The other element is that either party is a resident for a continuous period of one year immediately preceding the action.
*977 Subdivision (2) has two elements: that the parties resided in this State as husband and wife. This is also borne out conclusively by the testimony. The second element is the same as in subdivision (1).
Subdivision (5) has only one element and that is the same as the second element in subdivisions (1) and (2), except that it must be for two years instead of one.
Accordingly, if either party can be shown to have resided in New York for a continuous period of 1 or 2 years, then the statute will be satisfied.
Before making such a determination the word "residence” must be defined. Does it mean what it sounds like or is it just spelled that way and really mean domicile? Usher v Usher (41 AD2d 368 [1973]) held that although the statute uses the term "residence” it really meant domicile. The Legislature recognized this inequity and amended section 231 of the Domestic Relations Law to provide that "If a married person dwells * * * [in New York] when * * * she commences an action * * * for divorce * * * such person is deemed a resident * * * although * * * her spouse resides elsewhere.” Thus, since the wife commenced this action, she is a "resident” in the terms of Domestic Relations Law § 230. But she must not only be a resident, she must show that she has been a "continuous” one for at least one year prior to the action’s commencement (or two years under subd [5]).
There is little doubt that during the one-year period prior to the action’s institution plaintiff was domiciled in Greece. There is also no doubt that she had a residence in New York. As a matter of fact the home of the parties at 38 Casino Street, Freeport, New York, had her name on the deed. She resided there several times during the year. Certainly the plaintiff had a residence in New York since at least 1983 when the condominium was purchased, sold in 1984 and another, more expensive one, was bought in both the names of the plaintiff and defendant. It was her residence whenever she came to New York and there is credible testimony that she came to New York and stayed there several times during the one year preceding July 24, 1987. Was this residence, as the statute requires, "continuous?” There is a paucity of cases on the subject in New York. Pierce v Pierce (50 AD2d 867) determined that a plaintiff was a resident of New York although he had sold his home of several years a month prior to the commencement of the divorce action, and was a tran *978 sient trucker. He had not determined a new domicile and thus was "continuously” in New York.
Langlais v Langlais (90 Misc 2d 29), while most noted for its unique position that residence under Domestic Relations Law § 230 means residence and not domicile, also provides some insight into the concept of "continuous”. It dismissed a case for divorce where it found that the parties had moved back and forth from Florida and New York and plaintiff did not have a one-year continuous presence in New York prior to the action’s institution.
Lacking any further definitive case in New York, other jurisdictions were examined. Our sister State of Connecticut enacted a matrimonial statute similar to our own. The Connecticut Legislature mandated that the plaintiff prove that she "continuously” resided in the State for three years. When presented with the task of determining what that term "continuously” resided meant, the court declared: "It is not necessary that the residence should be literally uninterrupted. Morehouse v. Morehouse, 70 Conn. 420, 426 39 A. 516. 'But the word "continuously” must be given some adequate meaning * * *’ Morgan v. Morgan, 103 Conn. 189, 194, 130 A. 254, 255. We have not defined 'adequate meaning’ further than to say in the Morgan case that it certainly is not satisfied by the plaintiff’s presence in this state three or four times a year for two or three days at a time.” (Allan v Allan, 132 Conn 1, 3, 42 A2d 347, 348 [1945].)
A further explanation of the term is' found in United States ex rel. Illuzzi v Curran (11 F2d 468 [1926]). It involved an immigration act relating to persons who had five years’ continuous residence in this country. Such continuous residence of five years was found not to be available if it was made of two or more visits to this country. Nevertheless, the court was careful to observe that continuous residence does not necessarily mean continually remaining in the jurisdiction. It is not synonymous with immovability.
In Cummings v Cummings (133 Ky 1, 117 SW 289 [1909]) the Kentucky statute required a divorce petitioner to show she was a continuous resident of the State for a year before the action was commenced. The petitioner left the jurisdiction, but only to seek work in another State and thus was not physically in the court’s jurisdiction for the continuous period of one year. The court granted a divorce judgment for it found petitioner’s domicile was in Kentucky and upon her separa *979 tion and moving to another State she never gave up her domicile.
When comparing the foregoing illustrations against the one at bar it is obvious that the plaintiff cannot be deemed a resident of New York for a continuous period of one year. She was a domiciliary of Greece until July 5, 1987 when she moved to Piándome, New York. This was but 19 days before the summons was served. Until that time she was here sporadically during the prior year. Under no possible convoluted reasoning could it be deemed continuous. To be sure she was a resident for Domestic Relations Law § 231 clearly labels her such and thereby it is not necessary to show her to be a domiciliary. But that still left plaintiff to prove she was here for a continuous one-year period. At least if not absolutely continuous then she must show she was living in New York for the year except perhaps for a vacation, or to seek work temporarily out of New York. Nineteen days in the State before commencing an action, even taking into account that the plaintiff came to New York several times during that year and also owned a residence here, is simply not the "continuous” one year which the statute mandates. However, the fact that plaintiff was unable to prove that she could comply with subdivisions (1), (2) and (5) does not dictate that the entire case must fall for these same subdivisions come into play if "either party” is a resident for the continuous one-year period. An examination of the defendant’s status is thus most relevant.
It is obvious from the preceding that the defendant cannot be labeled a "resident” under Domestic Relations Law § 231 for it only applies to the one who commences the action. Thus there are two questions which must be answered in the affirmative to satisfy subdivisions (1), (2) or (5) as to the defendant before the plaintiff can claim its benefit:
1. Was defendant a domiciliary of New York?
2. Was it for a continuous period of one year (or two years as to subd [5])?
As to question 1: "Domicile” has been defined as "[a person’s] true and permanent home, to which he has at all times the intention of, sooner or later, returning” (Matter of Strobel, 200 Misc 483, 484-485 [Sur Ct, Montgomery County 1951]), and "[where a person] has voluntarily fixed his abode with a present intention of making it his permanent home” (Thompson v Mundheim, 180 Misc 1002, 1003 [Sur Ct, NY County *980 1943], affd 266 App Div 1001). Domicile is essentially a matter of intent, requiring an absolute fixed intent to abandon one and acquire another (Matter of Ruiz v Lavine, 49 AD2d 1; Matter of Davies, 133 Misc 2d 38).
The defendant claims his domicile is Greece and points to several facts to substantiate it. The first is that he had a leased apartment there and a piece of land upon which permits had been obtained to build a two-family home. Further, on his income tax statements he listed Greece as his home. His family lived there off and on. There was some evidence that the plaintiff eventually intended to retire in Greece.
As to the apartment in Greece, that was given up in 1986. There was no testimony the building of the two-family home had ever advanced past the permit stage. The fact that the income tax statements show Greece as the parties’ domicile are certainly not an admission by the plaintiff for plaintiff testified and the court finds it credible that the defendant caused the tax forms to be prepared and told her to sign them and she did. She had nothing to do with anything contained thereon. The real reason defendant indicated Greece as his domicile on his tax return was that it enabled him to claim a nonresident Federal tax exemption in the vicinity of $70,000. The address set forth on the income tax statements consequently is basically valueless as to determining the defendant’s domicile. (Lansford v Lansford, 96 AD2d 832 [2d Dept 1983].) Also, the filing of nonresident income tax reports indicate "more a desire to escape taxation than to acquire a new domicile, [and] is of little value in the solution of questions of domicile.” (In re Walter’s Estate, 48 NYS2d 952.)
That the family lived off and on in Greece is true. On the other hand, they lived for a considerable amount of time in New York and California also where they owned their own home, not a rented apartment as in Greece. Lastly, the defendant’s intention to retire in Greece in the future is most unpersuasive.
Against the defendant’s allegations there is the fact that he owned an apartment in which he lived and another of which he was the landlord both in Freeport, Nassau County, New York. He had but one car in all the world and that was in New York. When the apartment he leased to others was contracted for, the Freeport address was shown as the defendant’s location on the binder. The defendant’s driver’s license *981 application shows his address as Freeport and the space is left blank next to the item "Legal address if different from mailing address.” During the 20 years before the action was commenced, defendant was based in California 5 years, Paris 11 months and Kennedy 14 years including the last 6 (except for the 11 months in Paris), but not 1 day in Greece!
The most revealing of all is the testimony set forth at the end of the "Facts” section of this decision. While he was based in Paris for the year, defendant hardly ever went to Greece except when his crew was required to be there. Still, every month he returned to Freeport where his mail was sent, where he took care of his economics, where he paid his bills. Even his California realty bills were sent to his Freeport home. He checked on his daughter from Freeport. All his business was conducted from there. It was his headquarters, the place he always returned to no matter where he was staying at the time.
This fact pattern falls squarely within the definition of domicile as set by our own statute: SCPA 103 (15) defines domicile as "A fixed, permanent and principal home to which a person wherever temporarily located always intends to return.”
The plaintiff, the defendant and each of the children are American citizens either by birth or by an act of the defendant (he declared Jason to be such at the American Embassy when he was born in Greece). In line with defendant’s conduct, there is the strong presumption in favor of a domestic rather than a foreign domicile. (Matter of Ratkowsky v Browne, 267 App Div 643 [1944], lv denied 268 App Div 835; Matter of Hoff, 178 Misc 515 [1942].) The burden of proof as to establishing a change of residence is on the person claiming it. It is an especially heavy burden where the change is from a domestic to a foreign domicile. (In re Walter’s Estate, supra.)
The defendant has been a pilot for TWA for many years. But for the year in Paris where he stayed at a hotel, he has always been based in this country and, by far, the greater time at Kennedy. That is why he bought the condo in Free-port. It was the home he could always come back to!
The court finds that defendant has not established that Greece is his domicile and further finds that it is 31 Casino Street, Freeport, New York.
But is it really necessary to find where the defendant’s domicile is in a case such as this? Did the Legislature, which *982 is composed of so many persons learned and skilled in the law, enact a statute which uses the word residence and really means domicile? Is it not about time that courts permit the same plain language laws that now apply to leases and other documents (Insurance Law § 3102; General Obligations Law § 5-702; State Administrative Procedure Act § 301) apply to matrimonial statutes? If it says resident it means it. If it says domicile it means it. Are we not legislating ourselves when we interpret a word of clear and distinct import into something it is not (Langlais v Langlais, supra).
Perhaps the approach of Professor Alan D. Scheinkman in his Commentaries (Practice Commentaries, McKinney’s Cons Laws of NY, Book 14, Domestic Relations Law C230:3, at 29) is much more realistic when he avers that since Domestic Relations Law § 231 modifies the rule but only as to the plaintiff’s residence, the defendant also should be regarded as a resident as long as he has the proper nexus to New York. New York may have more reason to and should litigate a marital action between two parties who were married here and have very close ties with the State than a jurisdiction which is only technically associated with the marriage. The plaintiff herein has that strong nexus: She was married in New York, she owns a home in New York for many years, she comes back and forth to New York, and her husband works in New York. If not for the fact that the court found her husband, the defendant herein, to be a domiciliary of New York, then regardless of her strong involvement with our State, the action would fail. There is a need for a change and the Legislature is most respectfully urged to address this issue.
This court finds that defendant’s domicile has been in New York since at least 1983 when the Freeport condominium was purchased.
The motion of the defendant to dismiss the petition is denied.
Settle order on notice.