■ In the Matter of GRACE PLAZA OF GREAT NECK, Respondent, v DAVID AXELROD, as Commissioner of Health of the State of New York, et al., Appellants.—Harvey, J. Appeal from a judgment of the Supreme Court at Special Term (Cholakis, J.), entered April 16, 1985 in Albany County, which partially granted petitioner's application upon reargument, in a proceeding pursuant to CPLR article 78, to review respondent Commissioner of Health's computation of petitioner's Medicaid reimbursement rate for the period April 1, 1977 through December 31, 1977, and ordered recomputation of said rate.

In this CPLR article 78 proceeding, petitioner challenges respondent Commissioner of Health's method of computing the return on investment component of its 1977 Medicaid reimbursement rate pursuant to 10 NYCRR former 86-2.28. Petitioner, a skilled nursing home and residential health care facility, was a participant in the Medicaid program. The rates of Medicaid reimbursement to residential health care facilities are determined on a basis related to the costs of the facilities (42 USC § 1396a [a] [13] [A]; Public Health Law § 2807 [3]). Pursuant to Public Health Law § 2803 (2), regulations were promulgated by the Commissioner establishing a reimbursement formula. Regarding the computation of return on investment, the regulations provided: "In computing the allowable costs of a proprietary residential health care facility, there will be included a reasonable return on net equity capital, *excluding capital invested in land, plant, fixed equipment and improvements thereto,* invested for necessary and proper operation for patient care activities. The percentage to be used in computing this allowance will be a rate determined annually by the commissioner as reasonably related to the then current money market" (10 NYCRR former 86-2.28 [emphasis supplied]).*

In accordance with 10 NYCRR former 86-2.28, petitioner computed its total average equity capital in the amount of $319,903 for the time periods in question. Petitioner contends, without contradiction by respondents, that its computation was the fair value of its existing investment in all assets "except land, plant, fixed equipment and improvements thereto". Petitioner claimed an allowance at a rate of interest reasonably related to the then current money market. That rate, as determined by the Commissioner, was 11% and is not at issue in this case. Although the Commissioner did not challenge the value of total average equity capital as reported by petitioner, he only allowed $20,430 of it to qualify as an inclusion. The remainder was excluded as being representative of the real property equity which, by regulation, was required to be excluded.

As best as we can determine, the Commissioner applied the following methodology. The books of a separate entity, a realty company owned by the same persons as own petitioner, showed a negative equity for petitioner's real property in the

* The regulation was revised, effective January 1, 1978, and the phrases "net equity capital" and "improvements thereto" were changed to "average equity capital" and "capital improvements thereto" respectively.

amount of $128,968. Petitioner explained the negative equity as being the result of its taking advantage of depreciation rates allowed by income tax laws. Respondents do not take issue with petitioner's explanation and do not offer any proof that an actual negative equity existed as to the real property. Nevertheless, the Commissioner deducted the negative equity from petitioner's reported total average equity capital of $319,903 to arrive at a "net equity capital" figure of $190,935 for both real and personal property. The Commissioner then determined that 89.3% of that figure was in real property and allowed petitioner 10.7%, or $20,430, to be included as equity in personal property. It was agreed by all parties that the reasonable expenses of real property allowable for rate-making purposes (see, 10 NYCRR former 86-2.21) were computed independently from the computations herein and is therefore not in dispute.

While it is true that great deference is to be given to the Commissioner's interpretation of a regulation (see, Matter of Cortlandt Nursing Care Center v Whalen, 46 NY2d 979), it is also axiomatic that an agency is bound by the language of its own regulation and cannot construe it in such a manner that the plain language on the face of the regulation is rendered meaningless (see, Matter of Nekoosa Papers v Chu, 115 AD2d 821, 823; 2 Davis, Administrative Law § 7:21, at 98 [2d ed]). A regulation should be construed in its natural and most obvious sense without resorting to a subtle or forced construction (Matter of Cortland-Clinton, Inc. v New York State Dept. of Health, 59 AD2d 228, 231).

The reason why the Commissioner deviated from the plain language of the regulation is, to us, inscrutable. The result of his methodology is irrational. It begins by assuming that petitioner was possessed of a negative equity in real property which amounted to $128,968. However, the final determination resulted in a finding that the positive net equity in real property was $170,504.95. Thus, the positive net equity in the personal property was reduced from $319,903 to $20,430. The contradictory result of this methodology is that practically all of the total average equity capital value is now assigned to a component which had earlier been deemed a negative amount.

It is quite clear that the Commissioner's computation does not reflect economic reality and it does not foster any legitimate statutory or policy consideration. It is, at best, a forced construction of the regulation. We agree with Special Term's observations that: "the commingling of working equity capital with capital attributable to real property ownership is * * *

clearly improper. Not only does the language of the regulation itself establish the impropriety of this manner of computation, but the concept appears to be completely contrary to the scheme of the reimbursement formula. This formula envisions three separate factors of reimbursement—operational costs, capital costs and the reimbursement factor here in issue, a reasonable return upon the owner's cash investment in the facility. Reimbursement is separately computed upon these three factors and they should not be commingled * * * [This holding] is consistent * * * with what is said to be a major purpose of the methodology for reimbursement of return on equity—that is, to encourage a facility to carry large amounts of operating equity and thereby avoid operating with under capitalization and also avoid the need for capital loans, which of course, incur interest which is otherwise a reimbursable cost of operation." We conclude that the Commissioner's determination was not supported by substantial evidence and was arbitrary and capricious. Accordingly, the judgment appealed from must be affirmed.

Judgment affirmed, with costs. Main, J. P., Casey, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.

