■ In the Matter of VICTOR PRUSKY, Petitioner, v ARTHUR Y. WEBB, as Commissioner of the Office of Mental Retardation and Developmental Disabilities of the State of New York, Respondent.—Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of respondent which revoked petitioner's family care home operating certificate.

Petitioner was certified as an operator of a family care

home in Greene County providing residential care for retarded and developmentally disabled persons under regulation by the Office of Mental Retardation and Developmental Disabilities (OMRDD). A 19-year-old borderline retarded male, identified here as Wally and who had recently been incarcerated in Greene County jail for criminal acts of an assaultive nature, was placed in petitioner's facility as a temporary boarder on or about November 8, 1985. On January 20, 1986, Wally was involved in an altercation with petitioner's fiancée, her son and her two nephews. Following this incident, petitioner requested OMRDD to immediately remove Wally from his house, but agreed to retain him until the matter was discussed at a regularly scheduled meeting on January 22, 1986. On January 22, 1986, petitioner overheard Wally tell another male client, "This is how you hit her, boom", and he simultaneously slammed his fist into the palm of his other hand. Petitioner admonished Wally who responded with a snicker. Petitioner became angry and pushed or struck Wally several times. Wally reported the incident at the Greene County Retarded Children's Workshop where he worked. Wally was examined by a nurse, but was not injured. Petitioner himself notified OMRDD that day and all clients were summarily removed from the home.

Petitioner's operating certificate was revoked and a statement containing three charges against petitioner was filed April 23, 1986. The Hearing Officer sustained the first charge of physical abuse and recommended a six-month suspension of petitioner's operating certificate. Respondent concurred in the finding of physical abuse, observing that the client was "hit about the head and shoulders several times", but determined that since OMRDD was statutorily bound to protect clients from any further exposure to abuse, revocation of the operating certificate was mandated. On October 21, 1986, respondent issued an order to such effect (see, Mental Hygiene Law, § 13.07 [c]; § 16.17 [a]; § 16.19 [a]; 14 NYCRR 687.8 [f], [k], [m]).[1] This CPLR article 78 proceeding to review and annul the determination was commenced.

Petitioner contends that respondent's disregard of the Hearing Officer's recommended sanction is arbitrary and capricious and that respondent's determination is not supported by substantial evidence. We disagree. Generally, a Hearing Officer's

---

1. We observe that effective October 2, 1985, the rules governing family care providers are set forth in 14 NYCRR part 687, which supersedes 14 NYCRR part 87 (see, 14 NYCRR 687.1).

findings are entitled to great weight, particularly when the findings of fact depend upon the credibility of testimony and the demeanor of witnesses before him. However, such findings "are not conclusive and may be overruled by the official upon whom has been imposed the power to remove or mete out the discipline, provided, of course, that the latter's action is supported by substantial evidence" *(Matter of Simpson v Wolansky,* 38 NY2d 391, 394). Our search thus turns to whether substantial evidence may be found in the record to support the determination. " 'Substantial evidence means such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact; it is less than a preponderance of the evidence but more than mere surmise, conjecture or speculation' " *(Matter of Magro v Ambach,* 122 AD2d 321, *lv denied* 69 NY2d 609, quoting *Matter of Stoker v Tarentino,* 101 AD2d 651, 652, *mod* 64 NY2d 994; *see, 300 Gramatan Ave. Assocs. v State Div. of Human Rights,* 45 NY2d 176, 180). The evidence that petitioner had engaged in forcible contact against Wally was uncontroverted, with neither self-defense nor defense of others asserted. Petitioner, by his own words, effectively "lost it" and pushed or shoved Wally several times. Petitioner's actions were violative of the governing statutes and regulations *(see,* Mental Hygiene Law § 16.19 [a]; 14 NYCRR 687.8 [m]), and provide substantial evidence to support the determination *(see, Matter of Jensen v Webb,* 134 AD2d 713 [decided herewith]).

Petitioner further maintains that the governing regulations are unconstitutionally vague since they fail to clarify what behavior constitutes "abuse". While we recognize that the vagueness doctrine applies to administrative regulations *(see, Quintard Assocs. v New York State Liq. Auth.,* 57 AD2d 462, 464, *appeal dismissed* 42 NY2d 973), we find petitioner's argument without merit. It is provided in 14 NYCRR 687.8 (m) that "[a] family care provider shall ensure that clients are not physically or psychologically abused", but the regulation does not otherwise define the terminology utilized.[2] The OMRDD policy and procedure manual provides the following definition for "physical abuse": "Includes, but is not limited to, hitting, slapping, pinching, kicking, hurling, choking, shoving, and excessive tickling." It is not clear, however, whether

---

2. We note that respondent promulgated definitions for the relevant terms *(see,* 14 NYCRR 624.4 [b] [1], [3], eff Dec. 6, 1985), but the Attorney-General has represented in its brief that such definitions were not implemented until February 1986, after the occurrence of the subject incident *(see, Matter of Jensen v Webb,* 134 AD2d 713, 714, n).

petitioner was informed of the manual description. The question distills to whether the regulatory prohibition against "physical abuse" is so unclear that a reasonable person would be unable to comprehend what conduct was proscribed (see, *Matter of Slocum v Berman,* 81 AD2d 1014, 1015, *appeal dismissed* 54 NY2d 752). In our view, the regulatory language is not unduly vague and we have little difficulty in concluding that petitioner was fully cognizant that pushing or shoving a client was prohibited conduct. The record confirms that petitioner received specific training in this area and the fact that he immediately reported the incident confirms that he understood his behavior was prohibited. Accordingly, we find petitioner failed to establish that the regulation was void for vagueness (see, *supra*).

Finally, petitioner maintains that the penalty of revocation was unduly excessive given the circumstances attendant the incident. In *Matter of Jensen v Webb (supra),* we observed that respondent was required to consider the nature of an offense in gauging an appropriate penalty. As in *Jensen,* however, a review of respondent's determination shows that he revoked petitioner's certificate on the misperception that a finding of physical abuse mandates the revocation of a provider's license. Again, respondent observed that upon a finding of abuse "it is unnecessary to distinguish the extent of such abuse or the frequency thereof". The statutory framework, however is not so rigid. Mental Hygiene Law § 16.17 (a) expressly authorizes respondent to "revoke, suspend, or limit an operating certificate" where the provider has failed to comply with the governing rules. These circumstances prevailing, the matter must be remitted to respondent for reconsideration of an appropriate penalty (see, *Matter of Jensen v Webb, supra*).

Determination modified, without costs, by annulling so much thereof as revoked petitioner's operating certificate; matter remitted to respondent for further proceedings not inconsistent herewith; and, as so modified, confirmed. Mahoney, P. J., Kane, Casey, Weiss and Levine, JJ., concur.