In the Matter of EATON ASSOCIATES, INC., Petitioner, v JOHN C. EGAN, as Commissioner of the New York State Office of General Services, Respondent.

Third Department, December 15, 1988

332

APPEARANCES OF COUNSEL

*Couch & Howard, P. C. (Sharon Couch De Bonis* of counsel), for petitioner.

*Robert Abrams, Attorney-General (John Q. Driscoll* and *Wayne L. Benjamin* of counsel), for respondent.

**OPINION OF THE COURT**

LEVINE, J.

By Executive Order No. 21 (9 NYCRR 4.21), promulgated August 3, 1983, the Governor created in the Executive Chamber an Office of Contract Compliance and Minority and Women-Owned Business Enterprise (hereinafter the M/WBE office). The stated functions of the M/WBE office were, *inter alia,* to foster and promote business enterprises owned by minorities and women, to insure that contractors, "to the extent consistent with existing law", undertake affirmative action programs for employment of minorities and women, and to assist minority and women-owned business enterprises (hereinafter M/WBEs) in obtaining a fair share of State contracts. Executive Order No. 21 directed the creation of a certification program to insure that only bona fide M/WBEs benefit from the programs to be created pursuant to the order. Respondent was ordered to develop a certification procedure for that purpose. A Deputy Secretary to the Governor was later designated as Director of the M/WBE office.

Pursuant to Executive Order No. 21, the Office of General Services (hereinafter OGS) promulgated guidelines for certification of M/WBEs *(see,* 9 NYCRR part 340) "to facilitate their

participation in State contracts * * * funded or assisted by section 6267 of the * * * Unconsolidated Laws [the Prison Construction Act] or as authorized by such other laws, rules, regulations and orders as may apply", and "to make specific the mechanics" of the program initiated by the Governor's order (9 NYCRR 340.1). The guidelines set up criteria for eligibility and a procedure for applying to OGS for certification and for the processing of such applications. The guidelines also created a two-step appeal procedure in the event an enterprise is denied certification, first to an OGS Appeal Committee and then to the Deputy Secretary to the Governor named as Director of the M/WBE office.

In 1982 and 1983, Clark Eaton, Jr., who is black, worked at a general contracting firm known as Hadala Construction as an apprentice in a State-supported program designed to assist minorities and women to obtain the skills needed to operate a construction business. In 1983, he and the two sons of the owners of Hadala Construction (hereinafter the Hadalas), who are white, incorporated petitioner with Eaton owning 51% of the capital stock and the Hadalas cumulatively owning 49%. Petitioner had three directors, each having one vote. Eaton and his wife, who is also black, were elected directors, along with one of the Hadalas. Eaton was elected president of petitioner and the two Hadalas were named as vice-president and secretary/treasurer, respectively.

In April 1986, petitioner applied to OGS for certification as a M/WBE. The following August, OGS issued a letter denying the application, principally on the basis of the Hadalas' participation in the management of petitioner as it pertained to whether petitioner was a bona fide minority-controlled business enterprise. Petitioner appealed this ruling to the Appeal Committee. A hearing was held, at which Eaton and several other witnesses testified on petitioner's behalf and submitted supporting documents as exhibits. The Appeal Committee subsequently rendered a letter decision upholding the initial denial of certification and advising petitioner of its right to appeal the decision to the Governor's Director of the M/WBE office.

Petitioner then brought this CPLR article 78 proceeding to challenge the OGS determination, which was transferred to this court for review. The petition seeks an order annulling the determination and requiring OGS to certify petitioner as a M/WBE. The grounds for petitioner's challenge are (1) that Executive Order No. 21 and the OGS guidelines are unconsti-

tutional; (2) that the guidelines were not duly promulgated as a rule or regulation; (3) that Executive Order No. 21 and the guidelines were invalidly adopted without statutory authority; (4) that petitioner's procedural due process rights were violated because of the vagueness of the guidelines and the inadequacy of the procedures on the review of its application for certification; and (5) that if the guidelines are valid, the denial of petitioner's application thereunder was irrational and inconsistent with Executive Order No. 21 and the guidelines themselves.

■ Insofar as petitioner challenges the validity of Executive Order No. 21, its petition should be dismissed for lack of standing. Petitioner's objections to the Governor's order are twofold. First, it is claimed that the Governor, in promulgating Executive Order No. 21, failed to make the requisite findings of State participation in discriminatory treatment against minorities in order to demonstrate a compelling State interest for a valid affirmative action program based upon a racial classification (citing *Wygant v Jackson Bd. of Educ.,* 476 US 267; *Fullilove v Klutznick,* 448 US 448). Alternatively, petitioner argues that the adoption of an affirmative action program by the executive branch, in this case, the Governor, without legislative authorization violates the New York constitutional separation of powers doctrine (citing *Under 21, Catholic Home Bur. for Dependent Children v City of New York,* 65 NY2d 344). Petitioner, however, claiming status as a minority business enterprise, is not aggrieved by the affirmative action program embodied in Executive Order No. 21, as it might be were it a nonminority business enterprise not eligible for favored treatment thereunder *(cf., Rex Paving Corp. v White,* 139 AD2d 176). Indeed, without the Governor's order, petitioner would not be entitled to any conceivable advantage over any other bidder on State contracts and annulment of that order will not achieve for petitioner the remedy of certification that it seeks in this proceeding. Petitioner thus lacks standing because it has not suffered any personal injury fairly traceable to Executive Order No. 21 and likely to be redressed by the requested relief *(see, Allen v Wright,* 468 US 737, 751). Put another way, petitioner lacks standing to complain of any injury which the Governor's order may inflict in a constitutional sense upon others *(see, Matter of Sarah K.,* 66 NY2d 223, 240, *cert denied sub nom. Kosher v Stamatis,* 475 US 1108; *see also, Valley Forge Coll. v Americans United,* 454 US 464, 489-490, n 26). Standing goes to the jurisdictional

basis of a court's authority to adjudicate a dispute *(Allen v Wright, supra,* at 750-751; *see also, Matter of New York State Inspection, Sec. & Law Enforcement Employees, v Cuomo,* 64 NY2d 233, 241, n 3). Therefore, this claim is subject to *sua sponte* dismissal despite respondent's failure to raise the objection as to lack of standing *(see, People ex rel. Schick v Marvin,* 246 App Div 71, 72, *revd on other grounds* 271 NY 219; 4 NY Jur 2d, Appellate Review, § 296, at 379-380).

■ Dismissal is also required of petitioner's claim that the decision to deny its certification lacks a rational basis. Petitioner failed to avail itself of its right to a final administrative appeal to the Governor's Director of the M/WBE office, and has not brought itself within any of the exceptions to the doctrine that forecloses judicial review to one who has not exhausted his administrative remedies *(see, Matter of Patterson v Smith,* 53 NY2d 98, 100-101; *Watergate II Apts. v Buffalo Sewer Auth.,* 46 NY2d 52, 57). This is equally applicable to petitioner's objections, on due process grounds, that it received inadequate notice of some of the factors upon which OGS eventually relied in denying certification, and that it was not given an opportunity to confront third parties whose evidence outside the hearing was used as a basis for OGS' decision. A party does not avoid the exhaustion requirement merely by asserting the deprivation of a constitutional right *(Matter of Valvano v Jones,* 122 AD2d 336). There is nothing to demonstrate that the defects in procedures, if any, identified by petitioner would not have been considered and cured at the final stage of the administrative appeal process *(see, supra; Matter of Pfaff v Columbia-Green Community Coll.,* 99 AD2d 887, 888).

■ Petitioner is not precluded, because of failure to exhaust administrative remedies, on his remaining challenges, directed to the invalidity of the guidelines for vagueness, lack of statutory authority, improper promulgation as a rule or regulation and inconsistency with Executive Order No. 21. Each of these claims may be the proper subject of a declaratory judgment action, and the pertinent portions of the petition on these issues may be converted accordingly *(see, Matter of Kovarsky v Housing & Development Admin.,* 31 NY2d 184, 192; 3 Weinstein-Korn-Miller, NY Civ Prac ¶ 3001.06g; Siegel, NY Prac § 563, at 788).

■ On the merits, however, we are not persuaded by petitioner's claims. Judicial notice may be taken that the guidelines were duly filed with the Secretary of State as 9 NYCRR

part 340 in May 1987. Therefore, petitioner's objection with respect to their improper promulgation is foreclosed by our ruling rejecting a similar contention in *Rex Paving Corp. v White (supra,* at 183, n 2). Likewise, the guidelines are not subject to attack for lack of legislative authorization. As previously quoted, the guidelines are expressly intended merely to create the procedures and criteria for certification for the affirmative action program authorized under the Prison Construction Act (L 1983, ch 56, as amended) and for similar programs "as authorized by such other laws, rules, regulations and orders as may apply" (9 NYCRR 340.1), and to implement Executive Order No. 21. Insofar as the guidelines are used for certification purposes in connection with the affirmative action program under the Prison Construction Act, they have statutory authority *(see, Rex Paving Corp. v White, supra,* at 183-184). As to any other affirmative action program of the executive branch wherein the guidelines may be applied, petitioner has not shown that any of such programs are anything but voluntary *(see,* 9 NYCRR part 342). Accordingly, lack of statutory authority for the use of the guidelines in connection with such voluntary affirmative action programs is not fatal to their validity *(see, Matter of Fullilove v Beame,* 48 NY2d 376; *Rex Paving Corp. v White, supra,* at 183-184).*

Nor do we find that the guidelines are invalid by reason of any inconsistency with Executive Order No. 21 or by reason of vagueness. The Governor's order is aimed expressly "to insure that only bona fide minority * * * business enterprises benefit from the program" (emphasis supplied). The definitional criteria for a minority business enterprise contained in article IX (1) of Executive Order No. 21 require that the ownership interest of minority persons in a business enterprise must be "real, substantial and continuing", including the "authority to independently control the business decisions of the [business enterprise]". The guidelines are clearly designed to implement the foregoing policy and requirements of Executive Order No. 21. Determining the actual independent control by the minority interest necessarily entails investigation into the internal business practices of the enterprise, despite petitioner's argument to the contrary.

Finally, the guidelines are sufficiently definite to with-

---

* Further statutory authority for the certification program under Executive Order No. 21 may be found in legislation passed at the most recent session of the Legislature *(see,* L 1988, ch 261, § 63, adding Executive Law art 15-A).

stand petitioner's attack for vagueness. Each of the standards and criteria to which petitioner objects are clearly designed and appropriate to insure that minority persons claiming to own the business enterprise are in fact exercising actual, autonomous managerial control. Persons of ordinary intelligence could readily understand what pattern of conduct of the affairs of the enterprise is necessary to avoid being disqualified from certification. Given the obvious need for flexibility in providing standards to be applied in a myriad of business configurations, any more specificity in the guidelines would unduly weaken and inhibit the ability of OGS to fulfill its assigned responsibility to insure that only bona fide minority business enterprises are entitled to the benefits of the Governor's program. Accordingly, the guidelines are not unconstitutionally vague (see, Matter of Prusky v Webb, 134 AD2d 718, 720-721; Matter of Slocum v Berman, 81 AD2d 1014, 1015, mot to dismiss appeal granted 54 NY2d 752).

MAHONEY, P. J., CASEY, WEISS and HARVEY, JJ., concur.

Petition, insofar as it alleges that the guidelines promulgated by the Office of General Services pursuant to Executive Order No. 21 are invalid or have been invalidly applied, converted to an action for declaratory judgment; it is declared that the guidelines for certification of minority and women-owned business enterprises have not been shown to be invalid; determination confirmed, and remainder of petition dismissed, without costs.