■ In the Matter of ERA STEEL CONSTRUCTION CORPORATION, Petitioner, v JOHN C. EGAN, as Commissioner of the New York State Office of General Services, et al., Respondents.—Levine, J. Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court, entered in Albany County) to review a determination of the Office of General Services which sustained the denial of certification of petitioner as a women-owned business.

The uncontested facts establish that petitioner was incorporated by Lenore Janis in 1979 and that she is its sole stockholder, director and executive officer. Petitioner's business is that of a furnisher and erector of structural steel and iron.

In November 1983, respondent Governor issued Executive Order No. 21 (9 NYCRR 4.21) directing, *inter alia,* the establishment of a program to promote the participation of minority and women-owned business enterprises (hereinafter M/WBEs) in State construction projects and requiring respondent Commissioner of General Services to develop guidelines for certification of M/WBEs "to insure that only bona fide [M/WBEs] benefit from the program provided pursuant to this Executive Order". Certain basic criteria for eligibility were contained in Executive Order No. 21, namely, that women or minority persons own at least 51% of the enterprise or its capital stock, in the case of a corporation, and that "such ownership interest is real, substantial and continuing. The minority and women-owned ownership must have and exercise

the authority to independently control the business decisions of the entity" (Executive Order No. 21, art IX [1]).

In response to the Governor's directive, the Office of General Services (hereinafter OGS) adopted guidelines for certification of M/WBEs which have since been promulgated as a regulation of that agency (see, 9 NYCRR part 340). In March 1986, petitioner applied to OGS for certification as a M/WBE. Its application was initially denied by letter on the basis that Janis had not demonstrated that petitioner had "equipment, employees nor assets necessary for the performance of steel erection" and that her experience could not "be substantiated based on information received". Petitioner sent a letter of rebuttal, but OGS adhered to its denial of certification. Petitioner then availed itself of its right under the guidelines to appeal that denial to an OGS Appeal Committee, which conducted a hearing at which Janis and another witness testified in support of petitioner's application and OGS staff investigators testified in opposition. At the conclusion of the hearing, the Appeal Committee issued a written decision upholding the denial of certification on stated grounds. Petitioner then timely appealed that decision to the Governor's Director of the Office of Contract Compliance and Minority and Women-Owned Business Enterprise, the final step in the administrative appeal process set up under the guidelines. The decision of the Appeal Committee was sustained, without further elaboration of reasons. Petitioner then brought the instant CPLR article 78 proceeding to challenge the determination, which was transferred to this court for review.

The petition contains various constitutional and other legal challenges to the validity of Executive Order No. 21 and of the OGS guidelines, identical to those which were raised and rejected by us in *Matter of Eaton Assocs. v Egan* (142 AD2d 330 [decided herewith]). Consequently, as to these issues, this case is controlled by *Matter of Eaton Assocs.* In contrast to the petitioner in that case, however, petitioner here took advantage of the full appeal process under the OGS guidelines. Therefore, it is not precluded from challenging the determination on the ground that it was irrational, arbitrary and capricious. We find merit to these objections.

As previously noted and not at all contested, the primary purpose of the guidelines is to carry out the Governor's objective to insure that the benefits of the affirmative action program created under Executive Order No. 21 go only to a bona fide M/WBE, in terms of independent ownership and control over the business decisions of the enterprise. This is

particularly critical when ineligible persons also have an ownership interest in the enterprise *(see, Matter of Eaton Assocs. v Egan, supra)*. To this end the guidelines, as they existed when petitioner's application was considered by OGS, required proof that the minority or women owners exercised operational control and managerial control over the enterprise which is real, substantial and continuing, beyond pro forma ownership, including the power and ability to make basic "day-to-day decisions * * * on matters of management, policy and operations". In adjudging the acceptable level or extent of operational control, the guidelines provided that this factor "will rest upon the practices of the industry as identified in the charter membership requirements and/or operational principles of professional organizations or trade associations representing a given industry".

The uncontested evidence was that no one other than Janis had any ownership interest in petitioner or control over its operations and that the enterprise had been awarded a number of structural steel supply and erection contracts on its bids on relatively simple projects, generally for one-story buildings, on many of which its performance had been completed by the time certification was sought. Petitioner is a union shop, under a regional, industry-wide collective bargaining agreement. The agreement requires petitioner to employ a union foreman and crew on any job. Petitioner had no full-time employees other than Janis, a secretary and a bookkeeper. Petitioner hires a foreman and crew from a union hall for each project, although she exercises some discretion in picking a foreman from those available, who in turn is selective in hiring a crew.

In preparing bids, petitioner employs a professional estimator on an hourly basis, who reviews the particular project construction documents and furnishes a "take-off" as to the number and weight of steel pieces for the job, the number of required crane days and, possibly, the number of worker days to perform the proposed contract. Janis then visits the project site to see if cost-affecting logistical problems may be present. She then prepares a bid based on the rough data from the estimator and her figures for labor, equipment and overhead expenses. Petitioner rents the necessary equipment for each job. Janis visits a jobsite about three times a week to confer with petitioner's foreman and attends all job meetings, unaccompanied by the foreman, in which petitioner's part of the general contract is at issue or there are complaints to be discussed regarding petitioner's performance. Admittedly,

Janis herself has no special technical expertise as to the actual phases of physically erecting steel beams and columns. She insists in her contracts that the responsibility to see to the correct alignment of columns and anchor bolts, including surveying for plumness, is assigned to the general contractor.

The OGS decision to deny petitioner's certification was based upon findings that (1) it does not provide an on-site manager to supervise the union foreman and crew to protect petitioner's interests in the performance of the work; (2) because of the absence of an on-site manager, technical problems are resolved by the general contractor's architect or the owner's resident engineer; and (3) no provision is made by petitioner to have its employees or a subcontractor survey or test the alignment of columns for plumness. The decision further found that those three shortcomings "are contrary to [the steel erection] industry's practice". Citing Janis' lack of technical (in contrast to administrative) expertise, the Appeal Committee found that petitioner "has no one else on staff with the necessary technical knowledge to fulfill ordinary tasks which are part of the commercial norm for steel erecting at the job-site". Therefore, the Appeal Committee concluded that, based upon industry practice, petitioner lacked "the operational control on a daily basis in the field" and the working technical knowledge needed to operate a steel erecting business. The decision also alluded to Janis' noncooperation in a requested field visit to jobsites by OGS staff.

From our review of the record and upon any fair reading of Executive Order No. 21 and the guidelines, we conclude that the foregoing determination lacked a rational basis and was arbitrary and capricious. The OGS decision admits of no other interpretation than that, in the absence of Janis or some other full-time employee of petitioner having the technical knowledge and experience in the on-site operational aspects of steel erection, petitioner could not meet the guidelines' requirements of operational control to be certified as a M/WBE. But this application of the guidelines takes the operational control requirement out of the context of the over-all objective of both the guidelines and Executive Order No. 21, i.e., to insure that the ownership interest of the minority persons or women are bona fide, and ignores other provisions of the guidelines inconsistent with what appears to be an absolute requirement by OGS that the woman or minority owner of an interest in the enterprise must personally have technical expertise or employ someone full time who does. Notably, the guidelines specifically provide that, "[w]here the actual man-

agement of the business is contracted out to individuals, other than the owner, those persons who have the ultimate power to hire and fire the managers can be considered as *controlling the business"* (emphasis supplied). This, of course, is consistent with the purpose of the guidelines to identify bona fide ownership by a woman or minority person. There is absolutely nothing in the record which would suggest that Janis did not retain this type of operational control.

To the extent that the decision by OGS is based upon its conclusion that the way Janis conducted petitioner's business was contrary to industry practice, it too reflects a lack of factual foundation and a disregard by OGS of its own guidelines. As previously quoted, industry practices, under the guidelines, are to be identified through written standards of the applicable professional industry organization or trade association. Indeed, the Appeal Committee rejected the testimony of a knowledgeable expert called by petitioner, the manager of a State general contractor's association (that, in fact, there were no general industry-wide practices on certain aspects of operational control at issue), because steel erecting firms were not members of the association he represented. On the other hand, the only factual foundation in the record for the finding by OGS that petitioner's use of its hired union foreman for on-site supervision conflicted with steel erection industry practice was the testimony of an OGS staff person that he spoke to two steel erector firms, one in Saratoga County and possibly nonunion, the other from Ohio, indicating that "they had a person on the job * * * representing that firm". This hardly supports the conclusion that any specific industry practice exists as to on-site supervision by management. Moreover, again, OGS ignored the method prescribed by the guidelines for ascertaining any industry practice. Further, none of the evidence on industry practice related to whether steel erecting firms use their own employees to test "alignment of the columns for plumness".

From the foregoing, it appears clear to us that in its critical findings and conclusions regarding petitioner's ineligibility for certification, OGS either lacked a factual foundation for its reasons to deny petitioner's application or disregarded express standards contained in the guidelines themselves, or both. An administrative agency acts arbitrarily and capriciously when it fails to conform to its own rules and regulations *(Matter of Frick v Bahou,* 56 NY2d 777, 778; *Matter of Grace Plaza v Axelrod,* 121 AD2d 799, 801-802; *Matter of Epstein v Valenti,* 97 AD2d 881, 882). It is likewise arbitrary and capricious for

an agency to decide matters "without regard to the facts" (*Matter of Pell v Board. of Educ.,* 34 NY2d 222, 231; *Schneider v Ambach,* 135 AD2d 284, 291).

These conclusions equally apply to the Appeal Committee's finding that Janis failed to cooperate with an OGS investigator's requests for a field visit to one of petitioner's jobsites. The request was initially made without prior notice during the investigator's interview of Janis. Janis' schedule made it impossible for her to comply at that time. Janis was also then unable to give the interviewer a schedule of when work was to be done at any particular site. However, she subsequently wrote a letter to the investigator giving a tentative two-week schedule of the operations of some three or four jobs in progress, asking the investigator to "[p]lease let me know when you expect to be in this area so that I can obtain clearance for you to enter a jobsite". Apart from the Appeal Committee's misreading of this letter to somehow require Janis to take further initiatives to provide for the field visits, the record is simply devoid of any evidence of a willful refusal to cooperate on her part.

Petition, insofar as it alleges that the guidelines promulgated by the Office of General Services pursuant to Executive Order No. 21 are invalid or have been invalidly applied, converted to an action for declaratory judgment; it is declared that the guidelines for certification of minority and women-owned business enterprises have not been shown to be illegal; determination annulled, with costs to petitioner, and matter remitted to the Office of General Services for further proceedings not inconsistent with this court's decision. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.