OPINION OF THE COURT
Jane S. Solomon, J.
Petitioner Ignelzi Interiors, Inc. brings this proceeding, pursuant to article 78 of the CPLR, to challenge the decision of Deborah Buyer, General Counsel of the New York City Department of Small Business Services, Division of Economic and Financial Opportunity, dated June 22, 2010, denying Ignelzi’s application for certification as a minority-owned business enterprise (MBE), pursuant to chapter 11 of title 66 of the Rules of the City of New York.
Ignelzi is a New York State corporation, established on April 10, 1982, to engage in the business of woodwork and interior construction. When it was established, its two shareholders, Paul Ignelzi and Hugo Pomies, each owned 10 shares of the corporation; Paul Ignelzi held the offices of president and treasurer, and Hugo Pomies held the offices of vice-president and secretary. On May 1, 2008, an additional .5 share of stock was sold to Hugo Pomies, pursuant to a decision of the Board of Directors of Ignelzi. On that same date, the Board of Directors designated Hugo Pomies as president and Paul Ignelzi as vice-president of Ignelzi.
It is undisputed that Hugo Pomies is of Hispanic origin.
Ignelzi initially applied for certification as an MBE on November 13, 2008. On March 18, 2009, however, Ignelzi withdrew its application, presumably because it was a minority-owned business for less than one year, and, thus, could not provide the documentation of one year’s business activity, as required by 66 RCNY 11-22 (d) (3).
On or about June 17, 2009, Ignelzi reapplied for certification as an MBE.
On or about March 16, 2009, Pomies was interviewed by Patrick Walker of the Certification Unit of the Department of Small Business Services, Division of Economic and Financial Opportunity, regarding Ignelzi’s application for MBE status.
*644 On or about October 2, 2009, a recommendation was made to approve Ignelzi for certification. (See verified answer, exhibit K.) On January 11, 2010, however, Alfred O. Milton, Associate Director, Certification Unit of the Division of Economic and Financial Opportunity of the New York City Department of Small Business Services, rejected that recommendation and issued an MWBE (minority- or women-owned business enterprise) notice of denial (the Denial), finding that Ignelzi did not meet the requirements of minority ownership or control. With respect to ownership, the Denial found that the corporation did not issue 51% of its stock to a minority group member. It also listed the following “Relevant Facts,” among other things: Pomies had been issued the additional .5 share at no cost and had failed to document his claim of a $2,500 capital contribution; Pomies does not enjoy the customary incidents of ownership or share in risks and profits commensurate with 50.5% ownership; according to the 2006, 2007, and 2008 wage and tax statements, Pomies and his wife are compensated less than Ignelzi and his wife; and Ignelzi was corporate president from the inception of the corporation until May 1, 2008.
With respect to control, the Denial checked the following statements on the form notice:
“Decisions pertaining to the operation of the business enterprise are NOT made by the minority group member(s) . . . ,
“If the actual management of the business enterprise has been contracted out the minority group member(s) or women claiming ownership have NOT demonstrated that they have the ultimate power to hire and fire these managers and actually exercise this power and that they make substantial decisions which reflect control of the business enterprise, and
“The minority group member(s) or women claiming ownership have NOT demonstrated control of negotiations, signature authority for payroll, leases, letters of credit, insurance bonds, banking services and contracts, and other business transactions through the production of relevant documents.
“Relevant Facts:
“Per the signed Audit Interview Questionnaire at question 19, Mr. Ignelzi signs all contracts.
“Hugo Pomies does not have the ultimate authority to fire Paul Ignelzi.
*645 “Hugo Pomies, Paul and Linda Ignelzi each have full signatory authorization to the Citibank Bank Account (s) and all share unlimited access to the Corporate assets.” (Denial at 3.)
On March 4, 2010, Ignelzi filed a written appeal of the denial of MBE status. With respect to corporate ownership, Pomies reiterated that as the owner of 10.5 shares of corporate stock, he was the 51% owner of the company, and provided minutes of the meeting authorizing the sale of the .5 share, copies of stock certificates, and the cancelled check paying for the .5 share. Pomies also addressed the differences in salary between Hugo and Graciela Pomies and Paul and Linda Ignelzi, indicating that Linda worked as the company bookkeeper, working 40 hours per week, while Graciela did not perform work for the company, but was on the company books the minimum hours to qualify for Social Security and pension plan purposes, which, he states, is a customary incident of company ownership.
With respect to the issue of control, Pomies contended that he does exercise control of the company, stating:
“As a construction related business working closely with other trades work stoppages and change of direction happen constantly, so cabinetry assembly sequence, schedule changes, crew modifications, vehicle switching, client emergency needs etc. are a common occurrence. I work from the office out to the plant knowing what is expected from us out in the field and when. I determine how to accomplish each project with the time available, the personnel available, and the funds I have available. This is the ‘day to day’ I lived for the past 28 years.” (Letter from Hugo Pomies to Ms. Deborah Buyer, dated Mar. 4, 2010, at 2.)
In response to the statement that decisions pertaining to the operations of the business are not made by the minority member claiming ownership Pomies states:
“That is what I do! I review weekly receivables and payable from a report prepared by the bookkeeper at the beginning of ea. [sic] week, I review payroll prepared by the shop foreman before releasing for payment by midweek, and I review work load with a ‘Work in progress report’ prepared by the Project Managers at week’s end to project work force needs of overtime, hiring’s or layoffs. The Audit Interview *646 Questionnaire conceals all of these?--DOC No.4 — ” {Id.)
Pomies also submited a series of letters from businesses and individuals with which the company conducts business, including Citibank, Richard E. Zacharoff, the United Brotherhood of Carpenters and Joiners of America, H.I.T. Distributors, Ltd., all of which state that they deal with Pomies and understand that he has the power to make the management decisions for the company.
With respect to control of negotiations and signatory authority for payroll, leases, contracts, etc., Pomies submitted a variety of documents signed by him for the company including contracts for the purchase of equipment, equipment leases, and insurance agreements and states that “there is NO financially related issue not scrutinized or performed by me.” {Id. at 4.)
With respect to the statement in the Denial that “Mr. Ignelzi signs all contracts,” Pomies stated, “if I am not mistaking [szc] Question 19 of the Audit Interview Questionnaire refers to ‘Method of Business Origination or Acquisition.’ Mr. Ignelzi does not sign all contracts.” {Id.)
With respect to the statement that “[i]f the actual management of the business enterprise has been contracted out” the minority group owners must show that they must be able to hire or fire the managers and have control of the business, Pomies stated, “[i]t does not apply.” {Id. at 3.)
With respect to the statement in the Denial that he does not have the ultimate authority to fire Paul Ignelzi, Pomies conceded the issue but states, “We are partners/share holders. There is not such provision. Neither does he.” (Id. at 4.)
Finally, with respect to the statement that Pomies, Paul and Linda Ignelzi each have authority to sign checks and have access to the corporate assets, Pomies stated: “It is essential for the way we operate. After 28 years in business we both take well earned time off end [sic] neither can be prevented from making corporate commitments.” (Id.)
On June 22, 2010, Deborah Buyer, General Counsel of the Division of Economic and Financial Opportunity issued a decision denying Ignelzi’s appeal (the Opinion). With respect to the question of ownership of the company, Buyer reversed the earlier decision, stating that “[t]he minority owner introduced new evidence to rebut the Program’s findings that he failed to meet the ownership requirements of Rule 11-22 (b).” (Opinion at 4.) While it is true that Pomies did supply a *647 copy of the cancelled check showing proof of payment for the purchase of the .5 share, it would appear that on appeal, Buyer corrected the arithmetic error made in the original decision, finding that 10.5 shares constitutes more than 51% of the total corporate shares (not 50.5% as stated in the MWBE notice of denial).
With respect to control, however, the Opinion affirmed the original Denial, stating that “[t]he minority owner failed to establish his ability to control independently the Company as defined in the NYC Charter and MWBE Rules.” (Opinion at 5.)
The decision quoted the following criteria as set forth in the MWBE rules for determining whether the business is minority-controlled:
“(1) Decisions pertaining to the operations of the business enterprise must be made by minority group members or women claiming ownership of that business enterprise. The following will be considered in determining whether the minority group members or women are making such decisions:
“(i) whether minority group members or women have experience and technical competence in the business enterprise seeking certification;
“(ii) whether minority group members or women demonstrate the working knowledge and ability needed to operate the business enterprise; and “(iii) whether minority group members or women show that they devote time on an ongoing basis to the daily operation of the business enterprise.
“(2) Articles of incorporation, corporate by-laws, partnership agreements, business certificates, corporate tax returns, unincorporated business tax returns, partnership tax returns and other agreements, including but not limited to, loan agreements, lease agreements, supply agreements, credit agreements or other agreements must permit minority group members or women who claim ownership of the business enterprise to make those decisions pertaining to operations of the business enterprise without restrictions.
“(3) Minority group members or women must demonstrate control of negotiations, signature authority for payroll, lease, letters of credit, insurance bonds, banking services and contracts, and other business transactions through production of relevant docu *648 ments.” (Opinion at 5-6, quoting 66 RCNY 11-22 [c]-)
The decision goes on to find that the minority partner does not have “any independent control of the Company as required by the NYC Charter and MWBE Rules,” stating the following:
“The minority owner, although clearly establishing that he has experience and technical competence in the business enterprise seeking certification and demonstrating his working knowledge and ability to operate the business enterprise to which he contends he devotes time on an ongoing basis to its daily operations (a contention not clearly supported by documentation in the Appeal), has not demonstrated that he is independently controlling the Company, as required in the NYC Charter and MWBE Rules.
“Although the minority group member has signatory authority for payroll, he does not have independent control over the Company’s assets since his partner and his partner’s wife are also signatories on the Company’s bank account. In addition, the Appeal did not address the response to question 19 of the Uniform Certification Interview Questionnaire wherein Mr. Pomies had formerly attested that Mr. Ignelzi signs all the contracts. At best, it appears that both owners have authority to enter into contracts. Finally, Mr. Pomies, the minority partner, acknowledges that he does not have independent latitude to fire his non-minority partner, Mr. Ignelzi.
The Company appears to operate as an equal partnership, with Mr. Pomies and Mr. Ignelzi each exercising equal control.” (Opinion at 6.)
As an affirmative action program, it is obviously important that the benefits afforded minority- and women-owned business certification is only afforded for businesses in which minority and women-owners exercise “operational control and managerial control over the enterprise which is real, substantial and continuing, beyond pro forma ownership, including the power and ability to make basic ‘day-to-day decisions ... on matters of management, policy and operations.’ ” (Matter of Era Steel Constr. Corp. v Egan, 145 AD2d 795, 797 [3d Dept 1988].) It is likewise important that where certification is denied, there must be a real foundation for the denial.
In reviewing an administrative decision in an article 78 proceeding the court must determine whether the decision was *649 arbitrary and capricious and without rational basis. (Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974].) Although that determination is generally made without disturbing the underlying factual determination, it must have a rational basis. (Matter of Heintz v Brown, 80 NY2d 998, 1001 [1992].) Thus, the court in Matter of Era Steel Constr. Corp. v Egan (145 AD2d 795 [1988], supra) rejected the conclusion of the Governor’s Director of the Office of Contract Compliance and Minority and Women-Owned Business Enterprise that the owner of a woman-owned business did not have operational control of her business where the record did not support that conclusion.
In its verified answer and memorandum of law in opposition to the article 78 petition, respondent seems to focus primarily on three issues to support the conclusion that Mr. Pomies does not have independent control over Ignelzi: that Mr. Pomies does not have the ultimate power to hire and fire management, since he does not have the authority to fire Mr. Ignelzi; that he does not have independent control over the company’s assets, since Mr. Pomies, Mr. Ignelzi and Linda Ignelzi each have full signatory authorization to the Citibank bank accounts; and that Mr. Pomies does not have independent control over the company’s ability to enter into contracts.
With regard to its conclusion that Pomies does not have independent control of the business because he cannot fire Paul Ignelzi, respondent looks to one of the “additional eligibility provisions” in the rule which states that
“[w]here the actual management of the business enterprise is contracted out to individuals other than minority group members or women, minority group members and women must demonstrate that they have the ultimate power to hire and fire these managers, that they exercise this power and make other substantial decisions which reflect control of the business enterprise.” (66 RCNY 11-22 [d] [2] [emphasis supplied].)
The MWBE rules do not appear to contain a definition of “contracted out”; however, the use of that phrase in other cases suggests that it requires a real and substantial transfer of activities and authority. (See e.g. Matter of Otis El. Co. [Carney], 6 NY2d 358, 361 [1959] [“the employer contracted out work formerly done by its employees in one of its departments”]; *650 Sapphire Corp. v American Mercury Mag., 3 Misc 2d 586, 588 [Sup Ct, NY County 1955] [“H-M contracted out the printing of the magazine to an independent printing company”].)
In its brief, respondent contends that “[m]uch of the actual management of the business enterprise in the instant case was essentially ‘contracted out’ or delegated to the non-minority group shareholder because it was handled by the non-minority group shareholder.” (Mem of law in opposition to the article 78 petition at 9.) The primary bases for that assertion seem to be the statement in the March 16, 2009 interview report which states that Mr. Ignelzi signs all contracts, and the fact that Mr. Ignelzi and his wife Linda, who is the bookkeeper for the company, have authority to sign checks.
The copy of the interview report which was provided to the court by respondent is unsigned by either the interviewer or Mr. Pomies, so it is not possible for the court to determine whether Mr. Pomies ever saw the report and was aware of its contents regarding the signing of contracts, and, therefore, whether Mr. Pomies ever made such a statement during the interview. Furthermore, in Mr. Pomies’s appeal letter, which denies that Mr. Ignelzi signs all contracts, he stated: “[i]f I am not mistaking [szc] Question 19 of the Audit Interview Questionnaire refers to ‘Method of Business Origination or Acquisition’ Mr. Ignelzi does not sign all contracts.” (Letter from Hugo Pomies at 4.) The court notes that the question 19 referred to by Mr. Pomies is contained in the certification application for the minority- and women-owned business enterprise program, which was submitted by Ignelzi. Since, with his appeal papers, Mr. Pomies provided a number of Ignelzi contracts signed by him, at the very least, the information contained in the interview report, that Mr. Ignelzi signs all contracts, does not accurately reflect the way in which the business operates.
With respect to the fact that Mr. Ignelzi and his wife, who is the company’s bookkeeper, also have the authority to sign checks, that is not alone a sufficient basis on which to conclude that the management of Ignelzi is “contracted out” to Paul and Linda Ignelzi, as that phrase has generally been used. Furthermore, although the New York City regulations require that the minority group owner has the authority to sign payroll, there does not appear to be any provision in the regulations that requires the minority group owner to have sole authority to sign checks. (See 66 RCNY 11-22 [c] [3] [“Minority group members or women must demonstrate control of negotiations, *651 signature authority for payroll, leases, letters of credit, insurance bonds, banking services and contracts, and other business transactions through production of relevant documents”].)
The court concludes, therefore, that there is insufficient basis for respondent’s assertion that the management of Ignelzi has been “contracted out” to Paul Ignelzi, as that phrase is generally understood. The facts here are in sharp contrast with those in Matter of C.W. Brown, Inc. v Canton (216 AD2d 841 [3d Dept 1995]), cited by respondent, where the court upheld the denial of certification as a women-owned business. For there, not only was there testimony that the woman owner and her husband shared financial and hiring/firing decisions, as well as negotiating all bonding and insurance, the corporate bylaws provided that the husband, as president and chief executive officer, had sole management authority of the company. Here, there is no comparable provision of authority to the nonminority group owner in the bylaws of Ignelzi.
There is, therefore, no regulatory justification for respondent’s insistence that the minority group owner must have the authority to “fire” his nonminority group business partner.
In support of Ignelzi’s petition, Mr. Pomies submits a copy of minutes of a Board of Directors meeting held on July 1, 2009 containing the following clarification of the corporation’s bylaws: “It was agreed that nothing within the corporation’s by-laws shall inhibit or prevent the majority share holder from executing unilateral decisions concerning any and all business associated with the company including, but not limited to purchases, sales, employees, equipment, daily schedule, project administration, etc.” It appears, however, that those minutes were not provided to respondent as part of the record below, and, therefore, are not considered as a basis for this decision.
Finally, the court notes that another agency within the City of New York, the School Construction Authority of the New York City Department of Education, has certified Ignelzi as an MBE. Although the court agrees with respondent that it is not bound by the determination of a coordinate agency, it does provide some support for Ignelzi’s assertion that it is an MBE.
The court therefore concludes, based upon the considerations set forth above, that the decision denying MBE status to Ignelzi was without rational basis.
Accordingly, it is hereby adjudged that the petition is granted to the extent that the June 22, 2010 decision of Deborah Buyer, *652 General Counsel, New York City Department of Small Business Services, Division of Economic and Financial Opportunity, denying Ignelzi Interiors, Inc.’s application for certification as a minority-owned business enterprise is annulled, and the matter is remanded to respondent New York City Department of Small Business Services for reconsideration of the application of petitioner Ignelzi Interiors, Inc. consistent with this decision.