Matter of Upstate Elec., LLC v New York State Dept. of Economic Dev. (2020 NY Slip Op 00340)





Matter of Upstate Elec., LLC v New York State Dept. of Economic Dev.


2020 NY Slip Op 00340


Decided on January 16, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 16, 2020

528644

[*1]In the Matter of Upstate Electrical, LLC, Petitioner,
v
New York State Department of Economic Development et al., Respondents.

Calendar Date: November 21, 2019

Before: Garry, P.J., Egan Jr., Lynch and Devine, JJ.


Couch White, LLP, Albany (Jennifer Kavney Harvey of counsel), for petitioner.
Letitia James, Attorney General, Albany (Allyson B. Levine of counsel), for respondents.



Lynch, J.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Executive Director of respondent Division of Minority and Women's Business Development denying petitioner's application for certification as a woman-owned business enterprise.
In April 2017, petitioner — an electrical contracting company — applied to respondent Divison of Minority and Women's Business Development of respondent Department of Economic Development (hereinafter the Division) for certification as a woman-owned business enterprise (hereinafter WBE). Brooke Spraragen, the owner of 51% of petitioner's outstanding shares and its president, secretary and treasurer, submitted the application and supporting documentation. Spraragen's brother served as petitioner's vice-president and owned 49% of its shares. Following a review, the Division denied the application because petitioner did not demonstrate that Spraragen exerted sufficient control over the business nor that she shared in the risks and profits of the business in proportion to her 51% ownership interest. Petitioner appealed the determination and a hearing was held before an Administrative Law Judge (hereinafter ALJ). After hearing testimony from Spraragen and the Division employee who conducted the initial application review, the ALJ issued a report recommending that petitioner's application be denied. Respondent Executive Director of the Division accepted the ALJ's recommendation and denied petitioner's application for certification as a WBE. This CPLR article 78 proceeding ensued and was transferred to this Court.
Our review is limited to "whether, on the entire record, the determination is supported by substantial evidence" (Matter of C.W. Brown, Inc. v Canton, 216 AD2d 841, 842 [1995] [internal quotation marks and citation omitted]). "The substantial evidence standard is a minimal standard. It is less than a preponderance of the evidence and demands only that a given inference is reasonable and plausible, not necessarily the most probable" (Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d 1044, 1045 [2018] [internal quotation marks and citations omitted]).
A WBE is an enterprise that is at least 51% owned by one or more women whose ownership interest "is real, substantial and continuing" such that the woman "exercises the authority to control independently the day-to-day business decisions of the enterprise" (Executive Law § 310 [15] [a]-[c]). A determination that a woman controls the business must be supported by evidence that "[d]ecisions pertaining to the operations of the business enterprise [are] made by . . . [the woman] claiming ownership of that business enterprise" (5 NYCRR 144.2 [b] [1]). Relevant considerations in making this determination include whether the woman has "managerial experience or technical competence in the business enterprise" (5 NYCRR 144.2 [b] [1] [i]), and whether she "devote[s] time on an ongoing basis to the daily operation of the business enterprise" (5 NYCRR 144.2 [b] [1] [iii]).
Spraragen testified that her family has owned and operated an electrical contracting business for four generations. The family business is owned by her mother and operated by her brother, petitioner's vice-president. When petitioner was formed and the certification application was submitted, Spraragen was working full time as a project manager for a large development company located in Schenectady County. Petitioner is based in Putnam County, located approximately 100 miles away from Spraragen's workplace and home. Petitioner has six full-time employees, including an operations manager, a chief estimator, a project manager and a supervisor. Spraragen testified that she alone made all financial decisions, signed off on every check, helped prepare bids, negotiated the contracts for bonding and made all firing and hiring decisions. Petitioner's supervisor was responsible for being at the work site each day because a collective bargaining agreement prohibited her from being there. She further explained that the operations manager and chief estimator prepared all bid estimates, subject to her final approval. In addition, Spraragen testified that the operations manager was responsible for supervising the project managers, estimating staff and warehouse personnel and that he reported directly to her.
Petitioner's primary function is to bid on and complete contracts for electrical work. Spraragen characterized the bid preparation as an "all hands on deck" effort. More specifically, she testified that she helped to prepare the bid binders and reviewed the estimates prepared by others for completeness. As to the day-to-day work, she testified both that she speaks with the operations manager at least daily and exchanges texts "all day long," and that she limits herself to conversations before and after her regular work day (8:30 a.m. to 5:00 p.m.) and during her lunch hours. In apparent contrast to her claim that she devoted sufficient time to petitioner's work, Spraragen testified at length about her significant responsibilities with her full-time employer. In sum, her testimony revealed that Spraragen was experienced in real estate project development and had served as an intern and observed her father operate the family business.
In our view, although there were facts that could have supported a different result, substantial evidence supports the determination that Spraragen did not control the operations of the business enterprise (see Matter of Panko Elec. & Maintenance Corp. v Zapata, 172 AD3d 1682, 1683 [2019]; 5 NYCRR 144.2 [b] [1] [i]-[iii]). "[C]ontrol is an essential prerequisite to certification" (Matter of C.W. Brown, Inc. v Canton, 216 AD2d at 841, 842), and the issue is whether the woman owner "exert[s] independent control" of the business purpose (Matter of Panko Elec. & Maintenance Corp. v Zapata, 172 AD3d at 1684 [internal quotation marks and citation omitted]; see Matter of J.C. Smith, Inc. v New York State Dept. of Economic Dev., 163 AD3d 1517, 1519 [2018], lv denied 32 NY3d 1191 [2019]).
Giving the requisite deference to the ALJ's factual findings (see Matter of Haug v State Univ. of N.Y. at Potsdam, 32 NY3d at 1045), the record demonstrates that Spraragen held significant administrative, financial and human resource oversight responsibilities for petitioner. In contrast, petitioner's primary function — to bid on and complete electrical work — was controlled on a day-to-day basis by the supervisor, the operations manager and the chief estimator. We are mindful that it is not always necessary that a woman owner have technical competance to demonstrate eligibility for certification (see Matter of Era Steel Constr. Corp. v Egan, 145 AD2d 795, 798 [1988]). Spraragen had no training or experience in electrical work and only limited experience with electrical contracting. She acknowledged during her testimony that the operations manager and chief estimator had more significant and substantive experience and was unable to specify how she had the "working knowledge" necessary to review estimates or evaluate the work done each day by these more experienced employees (see Matter of Northeastern Stud Welding Corp. v Webster, 211 AD2d 889, 891 [1995]; 5 NYCRR 144.2 [b] [1] [i], [ii]). As for the time devoted each day to the project work, Spraragen testified only that she could FaceTime her supervisor daily. She did not claim nor was there any evidence that she did check the status of projects on a day-to-day basis (see 5 NYCRR 144.2 [b] [1] [iii]). Petitioner's claim that respondents overlooked the fact that she had the "ultimate power to hire and fire" these employees, and thus she retained control of petitioner (5 NYCRR 144.2 [c] [3]), is without merit. Petitioner never asserted that management of the business enterprise was contracted out and instead always maintained that Spraragen managed the business. In sum, although we recognize that Spraragen has demonstrated business expertise, substantial evidence supports the determination that she did not exert independent control over petitioner's operations.
We have considered petitioner's remaining arguments, including its claim that respondents should not have compared Spraragen's profit distribution to the operation manager's salary (see 5 NYCRR 144.2 [c] [2]) and, based on the foregoing, find them to be without merit.
Garry, P.J., Egan Jr. and Devine, JJ., concur.
ADJUDGED that the determination is confirmed, without costs, and petition dismissed.