[729 NYS2d 716]

MYUNG CHUN, Appellant, v NORTH AMERICAN MORTGAGE CO. et al., Respondents.

First Department, August 30, 2001

**APPEARANCES OF COUNSEL**

*Herbert Monte Levy* for appellant.

*Jennifer A. Mulvanerty* of counsel (*James G. Ryan* on the brief; *Cullen & Dykman,* attorneys), for North American Mortgage Co., respondent.

*Charles A. Termini* of counsel (*Jon B. Felice & Associates, P. C.,* attorneys), for Homecoming Financial Network, respondent.

*Richard T. Walsh* of counsel (*Denise M. Campbell* on the brief; *Rosen & Livingston,* attorneys), for East River Tenants Corp., respondent.

*Geraldene Sherr Duswalt* for Lorraine Skeen, respondent.

### OPINION OF THE COURT

WALLACH, J.

If you ask the very model of a modern court administrator what stands high on the list of priorities, you will find at the top the speedy dispatch of matters pending on the calendar. This case on appeal fully satisfies that important criterion. However, because its disposition lacks most of the other attributes of due process, we are compelled to reverse the outcome and remand the matter for further proceedings.

The facts are substantially undisputed. Plaintiff purchased for $150,000 a cooperative apartment at 200 East End Avenue in Manhattan, with financing secured by a mortgage from the Dime Savings Bank. The mortgage was thereafter assigned to defendant North American Mortgage Co. When plaintiff defaulted on her mortgage payments, North American commenced a foreclosure proceeding. On January 20, 1999, prior to foreclosure, plaintiff and North American entered into a forbearance agreement in which plaintiff acknowledged her arrears for the last eight months of 1998, and North American agreed not to exercise its foreclosure rights and remedies as long as plaintiff abided by the terms of the agreement (i.e., immediate resumption of mortgage payments, plus payoff of the arrears by a down payment and monthly payments through January 2000), with no "event of default," as defined in the agreement and loan documents. All payments were required to be made by bank or certified check. North American thereafter sold the mortgage to defendant Homecomings Financial Network.

At the same time, plaintiff was behind in her maintenance payments to the co-op. Defendant East River Tenants Corp. had commenced a summary nonpayment proceeding against plaintiff in Civil Court, New York County, which culminated in

a stipulation of settlement in May 1999, requiring her to cure her arrears and resume timely maintenance payments, or sell the apartment within six months.

Plaintiff allegedly defaulted on her payments under both the forbearance agreement and the maintenance contract. Homecomings foreclosed on the apartment by auctioning the stock and proprietary lease. At the foreclosure sale in October 1999, the successful bidder was defendant Skeen. The closing took place in December, and East River's claim for maintenance arrears was satisfied from the proceeds.

Plaintiff commenced this action to vacate the foreclosure sale by show cause order in February 2000, alleging that she had made the required payments under the forbearance agreement. In support, plaintiff submitted copies of checks and receipts dated through November 1999, but which were not uniformly dated on any particular day of the month. Skeen states that she was not individually served with plaintiff's summons and complaint, which are dated January 20, 2000.

Because of the short return date on the order to show cause, none of the defendants served any papers in opposition. East River states in its brief that plaintiff's prior counsel had agreed to an adjournment to allow defendants to prepare opposition papers, but the court refused to adjourn the motion for this or any other purpose. All parties participated in oral argument based solely upon the papers and exhibits presented by plaintiff.

In a short form order dated February 20, 2000, the IAS court stated simply that plaintiff's evidence showed she was in default in complying with the forbearance agreement, and dismissed the proceeding. We reverse.

The record, consisting only of plaintiff's moving papers, fails to support the court's summary resolution. Entirely overlooked was plaintiff's sworn assertion that she had timely made the mortgage payments for October and November 1999, but that those checks were held by Homecomings until after the foreclosure in October, and only then returned to her uncashed. While neither draft was a bank or certified check, as the agreement required, their retention by the payee until after the foreclosure gives rise to a claim of waiver of this condition, and a possible inference of default not by plaintiff but contrived by defendant Homecomings.

The only other event of default urged by defendants is plaintiff's alleged failure to maintain current maintenance pay-

ments to East River pursuant to the stipulation resolving the nonpayment proceeding in Civil Court. That stipulation not only provided an enumeration of plaintiff's maintenance payment obligations, but also granted her six months to effect a sale of the apartment. Nothing in the truncated record before us indicates that East River ever sought to hold plaintiff in default of those stipulated payments and to recover possession of the premises and a money judgment pursuant to that stipulation.

Defendants attempt to justify the disposition on appeal as a proper exercise of the court's power to dismiss an action *sua sponte,* based on the facial lack of merits of a *pleading*. The difficulty with this argument is that the court itself never invoked that power, instead basing its decision on "the *evidence* provided" (emphasis added). The court was without power to grant summary judgment before joinder of issue on plaintiff's complaint (*State Univ. Constr. Fund v Aetna Cas. & Sur. Co.,* 169 AD2d 52; *Republic Natl. Bank v Luis Winston, Inc.,* 107 AD2d 581). Even were there no triable issue, summary judgment could not be granted prior to joinder of issue (*Milk v Gottschalk,* 29 AD2d 698).

A serious aspect of due process overlooked by the IAS court was the absence of a notice of cross motion or any other notice to plaintiff that she would be required to respond to a motion to dismiss. Under these circumstances the court was virtually without jurisdiction to grant the relief afforded to defendants (*Matter of Briger,* 95 AD2d 887, 888; *Guggenheim v Guggenheim,* 109 AD2d 1012).

The cases cited by defendants are distinguishable. In *Macias v New York City Tr. Auth.* (240 AD2d 196) we upheld a court's *sua sponte* dismissal of a 10-year-old personal injury action where the plaintiff had willfully defied an order to appear for a deposition and her attorney had done nothing to reinstate himself after an eight-month-old order relieving him at his own request. In *Waterman v Waterman* (128 Misc 2d 665), the plaintiff wife in a divorce action moved for interim appraisal fees. The court held that the predicate for imposing such a financial burden upon the defendant husband would be a validly stated cause of action for (in this instance) cruel and inhuman treatment. Finding the claim before it deficient as a matter of law, the court dismissed the complaint *sua sponte,* with leave to replead. This 16-year-old decision has been cited only by way of criticism (*see, e.g., Metz v Duenas,* 183 Misc 2d 751, 753), mostly notably and bitterly in *Davis v Davis* (138

Misc 2d 970, 975-976, *affd* 144 AD2d 621). Obviously the willful default of both the plaintiff and counsel in *Macias*, and the interim relief granted in *Waterman*, bear no relationship to the events preceding the final dismissal in this case.

This Court had recent occasion to exercise *sua sponte* dismissal authority under extreme circumstances. In *Wehringer v Brannigan* (232 AD2d 206, *appeal dismissed* 89 NY2d 980), we dismissed *sua sponte* an action by a disbarred attorney to recover legal fees based upon the same egregious activities that had brought about his disbarment (in *Matter of Wehringer*, 135 AD2d 279, *appeal dismissed* 72 NY2d 874, *appeal dismissed and cert denied* 488 US 988), holding that the claim for legal fees "flouts the integrity of [the prior] order of this Court" (232 AD2d, at 207). We invoke *Wehringer* to emphasize that use of the *sua sponte* power of dismissal must be restricted to the most extraordinary circumstances. Nothing in the action at bar warranted such recourse.

Finally, we consider unwarranted the dissent's criticism of plaintiff for failing to refer to her motion for reargument. No appeal lies from denial of a motion for reargument (*Iocovello v City of New York*, 272 AD2d 201, *lv dismissed* 95 NY2d 879). Furthermore, we also reject the dissent's complete acceptance of the claims advanced in defendants' briefs that in the course of the "lengthy" oral argument heard by the court, plaintiff conceded away her entire case. Suffice it to say, nothing in this record supports such a one-sided reconstruction of what actually occurred.

Accordingly, the order of Supreme Court, New York County (Walter Tolub, J.), entered on or about March 1, 2000, which dismissed plaintiff's action seeking to vacate the judgment of foreclosure and denied her application for a stay in an eviction proceeding before the Civil Court, should be reversed, on the law, without costs, and the matter remanded for further proceedings consistent herewith.

Tom, J. (dissenting). I conclude, based on my review of the record, that plaintiff's own complaint, when considered in the light of her supporting papers and exhibits, fails to support her claim that she was in compliance with the Forbearance Agreement. Hence, the motion court had an adequate basis to deny plaintiff's order to show cause to vacate the foreclosure and stay her eviction. Remanding at this late stage solely for the sake of procedural niceties, when plaintiff's own papers fail to make out a prima facie case for entitlement to relief, unduly

elevates form over substance. Accordingly, I respectfully dissent.

The narrative background of this case is presented in the majority writing. It should be pointed out that the Forbearance Agreement was entered into on January 20, 1999. Plaintiff defaulted in the September 1999 payment under the agreement, and was served and concededly received the Notice of Auction of her apartment for October 19, 1999. The apartment was purchased by defendant Skeen and the closing took place on December 28, 1999. Plaintiff then waited over five months after the default and four months after the auction sale, until February 25, 2000, to commence the underlying order to show cause to vacate the judgment of foreclosure and to stay the eviction proceeding. Plaintiff's belated claim of compliance with the Forbearance Agreement four months after the apartment was sold in the auction sale speaks volumes about the lack of merit of her motion as is further reflected by the record. I would note at the outset that defendants contend, and plaintiff does not dispute, that lengthy oral argument on plaintiff's order to show cause was conducted during which plaintiff's counsel conceded that plaintiff defaulted on the Forbearance Agreement. As a result, we have been deprived of apparently dispositive admissions because of plaintiff's own failure to provide a complete recitation of the proceeding.

Further, plaintiff does not dispute that she moved for reargument of the court's dismissal, that opposing papers setting forth the position of East River and the mortgagee were submitted to the court, and that after reviewing these papers the court denied reargument. Nevertheless, plaintiff failed to mention the reargument motion and specifically defendants' written opposition thereto in her main brief. The fact that opposition papers were submitted at that time was highly relevant since plaintiff's main appellate argument was that a final disposition of her order to show cause was made in the absence of any submission from defendants. This clearly was not the case. The court did have the benefit of reviewing defendants' opposing papers before making a final determination of plaintiff's motion.

However, the record, even as it exists, allows for summary disposal on the merits. The Forbearance Agreement was structured so that any default under its terms would automatically trigger the lender's (or its assignee's) already adjudicated foreclosure rights. Plaintiff's allegation in her complaint that she had not defaulted and was in compliance with the Forbear-

ance Agreement ordinarily might present a sufficient basis to survive a CPLR 3211 facial challenge to the pleadings. However, that allegation is contradicted by plaintiff's own documentary evidence. Defendants did not submit opposition papers to plaintiff's order to show cause because of lack of time. Since defendants were basically given only a weekend to respond to plaintiff's order to show cause, no delay may be attributed to them. Nevertheless, oral argument was conducted on the issue of whether plaintiff had complied with the Forbearance Agreement. The court during oral argument apparently explored various omissions in plaintiff's documentary evidence that basically underscored the deficiencies in plaintiff's pleadings. Plaintiff had submitted to the motion court copies of checks and documents together with the supporting affidavit purporting to demonstrate her compliance and her entitlement to relief. Since plaintiff bears the burden of proof on the order to show cause and ultimately bears the burden of demonstrating a prima facie case of entitlement to vacatur, her submissions in the record in this regard are critically important. However, plaintiff's own record demonstrates defaults under the Forbearance Agreement, any one of which would be fatal. Notably, although she complains that she should have an opportunity to amend the pleadings, there is no indication in the record that she has sought to do so.

The Forbearance Agreement required that monthly payments were to be made on the first day of each month, by certified or bank check or in cash. These provisions of the agreement are clear; the photocopies of the checks and payment receipts submitted, though, clearly show that there was no certified check or receipt of payment from July 29, 1999 until September 22, 1999. Two checks issued in September are included, one dated September 22, 1999, and the other dated September 28, 1999, apparently covering September and October 1999 payments. No other check or receipt for September 1999 is included, leading to the conclusion that the September 1999 payment was some three weeks late. Although plaintiff complains that these checks were accepted and held, and later returned, the fact remains that the September payment was untimely, triggering the default.

Defendants claim, and it is undisputed, that plaintiff's attorney conceded at oral argument that, according to the attorney's own documents, plaintiff submitted a non-certified check for the September payment, which was returned. However, a copy of that first, rejected, check was not submitted

to the court. Plaintiff's omission from the record of prejudicial but relevant information should not be rewarded.

The majority urges that the retention by the mortgagee of two payments that were later returned uncashed could give rise to a claim of waiver. However, the Forbearance Agreement clearly provides that "any forbearance by the lender and acceptance of monies hereunder shall not be deemed an estoppel, prejudice or waiver of Lender's right to proceed with the foreclosure action."

Next, there is the matter of plaintiff's default in monthly maintenance payments to the cooperative corporation. Under the terms of the Forbearance Agreement and the original loan documents, a failure to comply with maintenance payments would constitute a default under both agreements. The co-op commenced a Civil Court summary nonpayment proceeding against plaintiff, concluded by a May 21, 1999 so-ordered stipulation requiring plaintiff to sell or cure the arrears within six months and to make current maintenance payments as they became due. The stipulation is directly referenced in plaintiff's pleadings (¶ 13) and a copy is attached therewith as exhibit H. However, she fails to allege that she complied with this stipulation either with current maintenance payments or arrears, an omission that is striking in the context of the pleadings. Defendant East River indicates, and plaintiff does not dispute, that the co-op's opposition papers to her reargument motion assert that plaintiff was in default of the stipulation. The co-op's brief also indicates that had foreclosure not taken place, the co-op would have moved for a final judgment of possession and a warrant of eviction in the non-payment proceeding. Plaintiff does not deny that plaintiff was in default of the stipulation with the co-op. The omission, though not dispositive, is telling. In the final analysis, though, in order to successfully vacate the foreclosure, plaintiff had to at least allege, and ultimately demonstrate, her complete compliance with the Forbearance Agreement, which incorporated her obligations to remain current with cooperative monthly maintenance payments. She failed to so allege, and her supporting documentation fails to provide any basis from which we might construe the pleadings in her favor in this regard. Hence, here, too, she failed to establish any prima facie case for relief.

On appeal, plaintiff relies significantly on the procedural point that the IAS court acted precipitously in dismissing without awaiting a cross motion to dismiss, and thus abridged her correlating opportunity to respond to such a cross motion.

The majority frames this as fundamentally a due process violation requiring remand for further proceedings. Were plaintiff's allegations and supporting papers adequate to state a case for relief and were the record complete before us, I might be inclined to agree. However, I fail to see how plaintiff was denied due process considering that: her own documentary evidence does not support her claim of compliance; lengthy oral argument was conducted by the court; all parties fully briefed the court on plaintiff's reargument motion; and plaintiff conceded during oral argument and in her reargument motion that she defaulted under the Forbearance Agreement. Under these circumstances, what purpose would be served by remanding this case for the formality of the various defendants moving to dismiss on the very omissions in the pleadings presented now for our review? Plaintiff can hardly claim surprise or prejudice when the core issue of this matter is readily apparent to all— did she fully comply with the agreement, by repaying arrears and staying current on a monthly basis, or did she not? Her own pleadings and supporting documents indicate that she did not. To remand would constitute a significant waste of judicial resources and an inordinate, and unnecessary, expense to the parties.

Further, defendant Skeen, who claims she was not individually served with plaintiff's summons and complaint dated January 20, 2000, has expended approximately $40,000 to renovate and make repairs to the apartment and presently occupies this apartment with her daughter. Hence, to remand at this late stage of the proceeding especially in light of the deficiencies in plaintiff's pleadings and proof would not do justice to her.

Although the case law is less than consistent on the power to dismiss *sua sponte*, dismissals, with courts and Judges parsing when that power should be exercised, and, as the majority notes, it is a power that should be used sparingly, nevertheless its validity, in appropriate cases, is well recognized (*see, e.g., Macias v New York City Tr. Auth.*, 240 AD2d 196; *Waterman v Waterman*, 128 Misc 2d 665). I conclude that in a case such as the one presently before us, involving defaults in money payments to distinct creditors or obligees, followed by opportunities to cure, followed by yet more defaults, in which the pleadings and the proceedings conducted below do not dispel the fact of the defaults, the IAS court's decision was appropriate.

Rosenberger, J. P., and Saxe, J., concur with Wallach, J.; Tom, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on or

about March 1, 2000, reversed, on the law, without costs, and the matter remanded for further proceedings consistent with this Court's opinion.