OPINION OF THE COURT
Richard E. Sise, J.
*498 The following papers were read on claimant’s motion for “relief from mistake of law or fact”: notice of motion and supporting affidavit of Susan Frasier, pro se; affirmation in opposition of Stephen J. Maher, Assistant Attorney General;[1] claim and answer.
On January 10, 2005, claimant filed a pro se claim seeking to recover money damages for what she defined as intentional tort and fraud arising from her interactions with the New York State Division of Veterans’ Affairs. Attached to her claim was a completed “Affidavit in Support of Application Pursuant to CPLR 1101 (d),” by which she requested waiver of the Court of Claims’ $50 filing fee. On January 21, 2005, the court issued an order denying the request for waiver or reduction of the filing fee and directing claimant to pay the fee within 120 days of the date of the order. The order further stated that if the fee was not paid within that time period, the clerk of the court was to close the file without further judicial action.
Claimant did not pay the filing fee, but two days before expiration of the 120-day grace period, she commenced the instant motion. She states that the relief she is seeking by this motion is “relief from mistake of law or fact,” citing CPLR 3005. That statute, however, has no relevance to this motion or to the underlying claim.[2] A review of claimant’s moving papers makes it very clear that the mistake to which claimant refers is the court’s alleged mistake in denying her application for waiver of a filing fee. Consequently, it appears that she has, in fact, brought a motion to reargue and/or renew (CPLR 2221).
On a motion for leave to reargue a prior order, a party has the opportunity to establish that the court overlooked or misapprehended the relevant facts or misapplied a controlling principle of law. On a motion for leave to renew, a party has the *499 opportunity to present new proof of material facts (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C222L7, at 182). Indigent claimants, many of whom are appearing pro se, typically apply for a waiver or reduction of a filing fee by making use of a simple application form, on which the claimant does little more than provide a list of his or her financial assets. This form does not request or leave room for arguments to be presented in support of the motion or for documentary evidence in support of the motion. The instant motion, therefore, presents the first practical opportunity claimant has had to either make legal arguments or to present evidence to the court.
For that reason, and with deference to her pro se status, the court grants leave to consider her application anew. On this motion, claimant has both presented argument in support of the relief sought and submitted one piece of documentary evidence. Consequently, the motion will be deemed one for both reargument and renewal and, again in light of her pro se status, the court will not require that she “identify separately and support separately each item of relief sought” (CPLR 2221 [i]).
Claimant makes several, apparently novel arguments in support of her contention that the court erred in denying her application for a waiver of the filing fee. She states that she had been granted permission to proceed in forma pauperis in a federal action in the United States District Court for the Northern District of Alabama and provides a copy of that order (Frasier affidavit, 2d exhibit), implying that what is good for one court should be good enough for another. She also argues that because the Court of Claims has no “published universal income standard” to establish who is entitled to poor person relief, it may not deny such status to anyone {id. HIT 5, 8). The majority of claimant’s assets cannot rightfully be considered by the court, she contends, because they consist of “[disability and work relief income” {id. 11 4) or are the assets of a disabled, incapacitated person {id. 1Í1I 6, 7). Finally, claimant argues that denial of poor person status in connection with this action would be unduly burdensome because she intends to file “other spawned and related” cases in other courts and against other parties and, if denied permission to proceed as a poor person, she would not be able to pay filing fees in all of those courts {id. 119).
Although she has presented arguments and evidence in support of the motion, claimant has nevertheless omitted one of the *500 critical first steps that is required in any application for relief under CPLR 1101 (a): providing the court with information about “the nature of the action” with “sufficient facts so that the merit of the contentions can be ascertained.”[3] Often, as a practical matter, the facts from which the merits of an applicant’s contentions can be ascertained will not be part of the moving papers but, rather, are found in a claim or other document that is already on file with the court (see e.g. Harris v State of New York, Ct Cl 2001, Fitzpatrick, J., No. 2001-018-065, Claim No. 95469, Motion No. M-62645; Milland v State of New York, Ct Cl 2001, McNamara, J., No. 2001-011-514, Claim No. 102801, Motion No. M-62544). As noted above, claimant’s original affidavit in support of her CPLR 1101 application was made on a preprinted form, containing only the statement that the facts of her case “are described in my claim and other papers filed with the court.” In the papers submitted in connection with this motion, claimant makes no additional reference to the nature or merit of her underlying claim and, therefore, it is the filed claim that the court must consider.
Claimant is a veteran who states that she is disabled as a result of exposure to PCBs while stationed at Fort McClellan in Anniston, Alabama.[4] She apparently sought the services of the State Division of Veterans’ Affairs (SDVA) to represent her in connection with her disability claim. The SDVA is part of the Executive Department (Executive Law, árt 17, §§ 350-364), and serves to coordinate the services and facilities available to members of the armed services and veterans within the state and to oversee the work of local veterans’ service organizations. This court does have jurisdiction to hear claims based on allegations that an employee of the SDVA was negligent in carrying out a ministerial duty in the course of providing services to a veteran (Di Maio v State of New York, 135 Misc 2d 1021 [Ct Cl *501 1987]; Di Maio v State of New York, 128 Misc 2d 101 [Ct Cl 1985] [allegations that an employee failed to forward a disability claim to the Veterans’ Administration and then hid the fact]).
To obtain the services of a veterans’ service organization in prosecuting her disability claim, claimant was required to sign a Veterans’ Administration form, Form 21-22, entitled “Appointment of Veterans Service Organization as Claimant’s Representative.” This form states on its face that it is a “power of attorney.”[5] Claimant apparently understood this reference to mean that SDVA was required to provide an attorney to represent her. Her claim is based on that contention and on the fact that she was assigned a representative who was not a lawyer. The relief claimant seeks is described as follows:
“a restraining order to stop the state of New York from operating a veterans claims law office without licensed lawyers; and is also seeking a court order requiring the Division of Veterans[’] Affairs to provide the Claimant with a licensed attorney for her disability case at the VA without delay; or in the alternative, is seeking the full value of the VA disability claim which is approximately $500,000 in compensation for her property loss” (claim at 12).
Claimant refers to title 38 of the Code of Federal Regulations, asserts that it governs the “practice of law that is mandated by the VA agency for all veterans disabilities claims,” and argues that it required all veterans to be represented by lawyers (claim 1i 3). In fact, section 14.631 of title 38, which provides for the veterans’ service organizations to be designated as a veteran’s representative and serves as authority for Form 21-22 and other forms, makes it clear that a veteran may be represented by such a local service organization, by a private individual, or by an attorney. Subdivision (f) (2) of that section even provides that “[a]n organization named in a power of attorney . . . may employ an attorney to represent a claimant in a particular claim” (emphasis supplied). There is likewise no provision in New York statutes that requires the Division of Veterans’ Affairs or any local veterans’ service organization to provide a lawyer to veterans who are pursuing their claims.
The claim, therefore, is without merit. In addition, this court would not have authority to issue the type of injunctive relief that claimant is seeking, even if her basis for seeking relief was meritorious. The Court of Claims does not have subject matter *502 jurisdiction to hear claims where the claim for money damages is merely incidental to the relief sought (Guy v State of New York, 18 AD3d 936 [3d Dept 2005]).
CPLR 1101 does not expressly provide for the options available to the court if, on the basis of the review of merit conducted to determine if poor person relief should be granted, it determines that the underlying action is wholly lacking in merit. Certainly, the court may deny poor person relief, for otherwise requiring a review of merit would be meaningless (see Matter of Joseph, 155 Misc 2d 724, 725 [Sup Ct, Queens County 1992] [a showing of merit is a “prerequisite to the granting of such relief’ and a court must not “rubber stamp” a CPLR 1101 application simply because they are made by poor persons]). The standard for determining whether there is sufficient merit for the purpose of granting poor person relief appears to be quite low: whether the applicant’s contentions are “not frivolous” (Nicholas v Reason, 79 AD2d 1113, 1113 [4th Dept 1981]; accord Matter of Romano, 109 Misc 2d 99, 103 [Sur Ct, Kings County 1981] [“This requirement does not call for a showing of substantial probability of success but requires ‘only that the court be satisfied that there is merit in the applicant’s contentions — i.e., that it is not frivolous’ ”], quoting 2d Prelim Report of Advisory Comm on Prac and Pro, 1958 NY Legis Doc No. 13, at 389 [the applicant must show that his action has merit, “i.e., that it is not frivolous”]).
In Matter of Joseph (155 Misc 2d 724 [1992], supra) and in Sledge v Hesson (274 AD2d 777 [3d Dept 2000]), the courts determined that the applicants’ contentions lacked merit, but the question of whether such a determination should or could lead to dismissal of the action did not arise; in both instances the CPLR 1101 motion had been made prior to commencement of the lawsuit. Research has not disclosed any case in which a court reviewing the merit of an existing claim for purposes of deciding a CPLR 1101 motion has dismissed the action, sua sponte, upon determining that the contentions on which it was based were frivolous or meritless.
This contrasts with federal practice, where courts are not only required to review the merit of any action in which the litigant seeks to obtain poor person relief (referred to as in forma pauperis in federal practice), but they are also required to dismiss such an action if it is determined to be frivolous or if it fails to state a cause of action. 28 USC § 1915, which governs proceedings in forma pauperis, provides, in relevant part, as follows:
*503 “(e) ... (2) Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that—
“(A) the allegation of poverty is untrue; or
“(B) the action or appeal—
“(i) is frivolous or malicious;
“(ii) fails to state a claim on which relief may be granted; or
“(iii) seeks monetary relief against a defendant who is immune from such relief.”
This, of course, results in a judicial “weeding out” of nonmeritorious claims early in the proceeding and is a screening mechanism that does not occur in other actions where no poor person relief is requested. In support of this function and the result that some actions will be dismissed at a very preliminary stage, it has been pointed out that the goal of providing equal access to the courts for indigent persons is undercut or distorted when such litigants have, in essence, nothing to lose by commencing a lawsuit: “Since non-indigents routinely must decide if their claim is worth the costs of litigation, it is not unfair to force IFP [in forma pauperis] plaintiffs to make comparable assessments” (Mary Van Vort, Controlling and Deterring Frivolous In Forma Pauperis Complaints, 55 Fordham L Rev 1165, 1190 [May 1987]; see also Denton v Hernandez, 504 US 25 [1992]). Dismissal of a nonmeritorious action at this preliminary stage has also been supported because often it spares prospective defendants “the inconvenience and expense of answering such complaints” (Neitzke v Williams, 490 US 319, 324 [1989]).
Prior to 1995, the federal statute provided only that a court “may” dismiss an action and then only if the allegations of poverty were untrue or if the action was “frivolous or malicious.” (28 USC § 1915 [former (d)].) The standard for determining frivolity was lower than the standard applied when a complaint was subjected to a motion to dismiss for failure to state a cause of action (Fed Rules Civ Pro rule 12 [b] [6]). In 1989, the United States Supreme Court held that when a review of merit was conducted as part of a section 1915 application, dismissal could occur only when — considering both the factual allegations and legal conclusions contained in the pleading — the complaint lacked “an arguable basis either in law or in fact” (Neitzke v Williams, 490 US at 325, supra).
Section 1915 was amended to its present form by the Prison Litigation Reform Act (Pub L 104-134, § 804 [a] [5], 110 US *504 Stat 1321, 1321-1374 [1996]), and, as indicated above, it now specifically requires that a court “shall” dismiss an action if, among other things, it “fails to state a claim on which relief may be granted.” (28 USC § 1915.) It is accepted that Congress’ intention in effecting this change was to overrule the holding of Neitzke v Williams (supra) and to require, not just permit, dismissal if the complaint fails to state a cause of action (Lopez v Smith, 203 F3d 1122, 1126-1127 [9th Cir 2000]). It should be noted, however, that some federal courts have interpreted this standard more leniently than others (see e.g. Larkin v Savage, 318 F3d 138, 139 [2d Cir 2003] [“We must reverse a district court’s dismissal pursuant to § 1915A whenever a liberal reading of the complaint gives any indication that a valid claim might be stated”]).
In New York practice, where the relevant statute (CPLR 1101) does not expressly give courts the authority to dismiss even frivolous actions, there is also scant authority for such dismissals in case law, no matter what the reason. In isolated instances, sua sponte dismissals have been upheld where the court in question lacked jurisdiction to adjudicate the dispute (see e.g. Matter of Eaton Assoc. v Egan, 142 AD2d 330 [3d Dept 1988] [lack of standing]) or in highly unusual circumstances, such as a disbarred attorney who sought to recover legal fees based upon the same egregious activities that had brought about his disbarment (Wehringer v Brannigan, 232 AD2d 206 [1st Dept 1996], appeal dismissed 89 NY2d 980 [1997]; see also discussion in Myung Chun v North Am. Mtge. Co., 285 AD2d 42, 46 [1st Dept 2001] [“use of the sua sponte power of dismissal must be restricted to the most extraordinary circumstances”]).
As a general rule, however, such dismissals are discouraged and ultimately invalidated (see Matter of Fry v Village of Tarrytown, 89 NY2d 714 [1997] [trial court erred in sua sponte dismissal of an action for filing defect not raised by defendant]; VSL Corp. v Dunes Hotels & Casinos, 70 NY2d 948 [1988] [Appellate Division acted outside its authority in sua sponte dismissal of an action on grounds of forum non conveniens]; Strasser v Prudential Sec., 2 AD3d 239 [1st Dept 2003] [sua sponte dismissal of long-dormant claim was error in absence of a 90-day demand]; Hoeffner v John F. Frank, Inc., 302 AD2d 428 [2d Dept 2003] [dismissal without notice to the parties was improper]; Matter of Travelers Indem. Co. of Ill. v Nnamani, 286 AD2d 769, 770 [2d Dept 2001] [“inherent power to control its calendar does not include the authority to sua sponte dismiss *505 an improperly venued proceeding”]; Myung Chun v North Am. Mtge. Co., 285 AD2d at 46, supra [dismissal prior to joinder of issue and with no notice to plaintiff was improper]; Matter of Phillips v Town of Clifton Park Water Auth., 215 AD2d 924 [3d Dept 1995] [error for trial court to convert a motion for dismissal to a motion for summary judgment without giving notice to the plaintiff]; Matter of Isabella v Hotaling, 207 AD2d 648 [3d Dept 1994] [Supreme Court lacked authority to go behind the pleadings and question timeliness when that issue was not raised by the opposing party]; Matter of Dental Socy. of State of N.Y. v Carey, 92 AD2d 263 [3d Dept 1983] [sua sponte dismissal on ground not raised in motion to dismiss was error where plaintiff was prejudiced by inability to respond]; Matter of Unger v Joy, 78 AD2d 680 [2d Dept 1980] [sua sponte dismissal on ground not raised in motion to dismiss was error]). Consequently, despite the fact that the instant claim lacks even arguable merit, it appears that the court lacks authority to dismiss it at this stage.
Because the court concludes that there is no merit to claimant’s contentions, it will adhere to the original determination that she is not entitled to proceed as a poor person pursuant to CPLR 1101. Claimant may, if she wishes to do so, continue prosecution of the action by paying the requisite filing fee within 30 days from the date this decision and order is file-stamped. If claimant fails to pay the fee within that time, the clerk of the court is directed to close the file without further judicial action.
Claimant’s motion, which is deemed a motion to reargue and to renew, is granted and, upon reconsideration, the court adheres to its original determination to deny claimant’s application to proceed as a poor person.

. Defendant’s affirmation was considered only to the extent it opposes claimant’s application to renew or reargue. The remainder of the affirmation addresses motions which have not been calendared because the filing fee for the claim has not been paid.

. CPLR 3005 relates to the doctrine of voluntary payment, whereby money paid under mistake of material fact may be recovered, unless such recovery is inequitable (Kirby McInerney & Squire, LLP v Hall Charne Burce & Olson, S.C., 15 AD3d 233 [1st Dept 2005]). CPLR 3005 provides that “[w]hen relief against a mistake is sought in an action or by way of defense or counterclaim, relief shall not be denied merely because the mistake is one of law rather than one of fact.” The statute removes technical objections where recovery of such payments may be based on a mistake of law that can be analogized to a mistake of fact (Dillon v U-A Columbia Cablevision of Westchester, 292 AD2d 25 [2d Dept 2002], affd 100 NY2d 525 [2003]).

. Subdivision (a) of CPLR 1101 states:
“The moving party shall file an affidavit setting forth the amount and sources of his or her income and listing his or her property with its value; that he or she is unable to pay the costs, fees and expenses necessary to prosecute or defend the action or to maintain or respond to the appeal; the nature of the action; sufficient facts so that the merit of the contentions can be ascertained-, and whether any other person is beneficially interested in any recovery sought and, if so, whether every such person is unable to pay such costs, fees and expenses” (emphasis supplied).

. Claimant purports to bring this claim “as part of the Fort McClellan veterans class,” a group of over seven million veterans who may have been disabled by such exposure.

. A sample of this form is attached to the claim.